liMARCUS, Justice.*
On June 5, 1987, Rosa Lee Berry and her foster son, Bryant Cheatham, Jr., were passengers in a van owned by Robert Allen, d/b/a Broadway Transportation Service, and driven by Allen’s employee, when the van struck a parked automobile. Ms. Berry sustained personal injuries in the accident.
Broadway Transportation Service was enrolled by the State of Louisiana, Department of Health and Human Resources (DHHR), Office of Family Security, as a provider of non-emergency medical transportation services pursuant to Louisiana’s Medical Assistance Program under the authority of Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 et seq. The Medical Assistance Program was designed to provide health care benefits, including transportation to and from the health care services, to qualified recipients. Cheatham was a recipient of services *413 and required transportation to and from kidney dialysis and was also mentally retarded and required the assistance of Ms. Berry. DHHR, Office of Family Security, was responsible for the overall management of the program including the determination of qualified providers of medical and transportation services and determination of qualified recipients of the services.
Ms. Berry filed this suit for damages against the State of Louisiana, through DHHR, Office of Family Security (the state) alleging liability on the theory that the state was negligent in its failure to monitor the operations of Allen’s company, Broadway ^Transportation Service, and in its failure to follow its own guidelines requiring Allen to provide adequate liability insurance out of which plaintiffs personal injury claims could be satisfied.[1] The negligence of the driver of the van was stipulated by the parties.
The trial judge rendered judgment in favor of the state and against plaintiff dismissing plaintiffs suit. The trial judge found that plaintiff failed to prove the existence of an employer-employee relationship between the state and Allen so as to impose vicarious liability on the state. Additionally, the court held that any alleged failure of the state to follow its guidelines and insure that Allen had adequate insurance was not a cause-in-fact of the accident. Plaintiff appealed. The court of appeal reversed. It agreed with the trial court that plaintiff did not prove an employer-employee relationship between the state and Allen so as to find vicarious liability. However, it found that the state owed a duty to plaintiff based upon its special relationship with patients and their attendants to make certain that Allen’s van was covered by adequate liability insurance and that the state breached that duty. The court awarded general damages for plaintiffs injuries in the amount of $70,000 and medical expenses of $16,297.37 for a total of $86,297.37. It held the state liable to plaintiff for $50,000, the amount of liability insurance coverage that Allen should have provided in order to be enrolled as a medical transportation provider.[2] Upon the state’s application, we granted certiorari to review the correctness of that decision.[3]
Pursuant to the administration of the Medical Assistance Program, the Office of Family Security issued an “Emergency and Non-Emergency Transportation Services Provider Manual” which set Isforth procedures for arrangement of transportation for all Title XIX recipients. The manual contained guidelines for enrollment as a provider of non-emergency medical transportation and procedures for reimbursement of services. The guidelines state that all providers are to furnish evidence of minimum liability insurance coverage of $50,000 per person and $125,000 per accident by filing a certificate of insurance with the Bureau of Health Services Financing as part of the enrollment procedure. The guidelines further state it is the responsibility of the provider to report any changes in the information on the enrollment form. The provider is required to submit to vehicle inspection prior to certification and annually thereafter. The manual further provides guidelines to providers for the safe operation of their vehicles. All providers are required to execute a hold harmless agreement in favor of the state. The provider is set up by the administrator of the program with qualified recipients. If a recipient does not make a choice of providers, then recipients are assigned on a rotating basis. A provider may decline to transport recipients and a provider under the program need not confine his transportation services to the state. The enrollment does not have a set term. The state may impose sanctions against a provider for failure to comply with the policy or rules and regulations including termination of participation in the program.
Robert Allen testified that Broadway Transportation Service was enrolled as a provider on October 15,1986, eight months prior *414 to the accident. Allen listed the van together with two other vehicles on his original enrollment form; however, the certificate of insurance filed with the state did not list the van that was later involved in the accident, but only the other two vehicles. Allen testified that the van should have been included on the certificate of insurance but it was not. The certificate of insurance that he filed with the state listed Alexandria Insurance Agency as the agency writing the insurance for the vehicles. Allen testified that he was the owner of Alexandria Insurance Agency. The certificate listed Southern Insurance Service as the company ^affording insurance coverage on the vehicles in the amounts of $190,-000 per person/$280,000 per accident. However, at the time of Allen’s enrollment in the program, Southern Insurance Service had only issued a binder on the vehicles. Allen later found out that Southern Insurance Service could not provide the insurance. Instead, he went to State Farm and took out a liability insurance policy on the van in the amounts of $100,000 per person/$300,000 per accident but he never informed the Office of Family Security about the change in the insurance company. Allen testified that he thought he had coverage for business use under the State Farm policy but in fact the policy had a business use exclusion and therefore did not provide coverage for transporting persons for a charge. The state was unaware of the fact that Allen’s insurance was with a company other than that listed on the certificate of insurance until after this accident occurred. Plaintiff was able to collect $25,000 under the uninsured motorist provision of the State Farm policy. Allen was discharged in bankruptcy on July 7, 1988, about a year after the accident.
The issue to be decided is whether the state is liable to plaintiff when the state has enrolled a medical transportation provider in its program who has failed to comply with the program guidelines requiring the provider to cover its vehicle with a certain amount of liability insurance and that provider causes personal injury to plaintiff.
In order to determine whether liability exists under the facts of a particular ease, our court has adopted a duty-risk analysis. Under this analysis plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993). Whether a duty is owed is a question of law. The inquiry is whether the plaintiff has any law — statutory, jurisprudential, or arising from general principles of fault — to support his claim. | fFaucheaux v. Terrebonne Consol. Gov., 615 So.2d 289, 292 (La.1993). We stated in Fowler v. Roberts, 556 So.2d 1, 7 (La.1989) (on original hearing) that governmental agencies in the performance of governmental functions may be subjected to the imposition of certain duties, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. The determination of whether a particular duty should be imposed on a particular governmental agency is a policy question. It is our role to determine whether there is any jurisprudential or statutory rule or policy reason why, under the facts and circumstances of this case, the state would owe a duty to plaintiff to compensate her for her personal injuries.
Allen provided the state with a certificate of insurance that did not list the van that was later involved in the accident in which plaintiff was injured. Allen stated on the certificate that he had insurance that complied with the guidelines when in fact he did not. The state did not know, until after the accident occurred, that Allen’s insurance on the van was with a different insurance company than that set forth on the certificate of insurance or that the insurance coverage that Allen provided had a business use exclusion. Allen had the responsibility under the guidelines to furnish the state with any change in information on the enrollment form or certificate of insurance and he did not. Allen failed to comply with the insurance requirements.
We conclude that while the state, through DHHR, had a duty to administer the Medical Assistance Program under the guidelines set *415 forth in the provider manual, that duty did not impose liability on the state to third persons (including qualified recipients and their attendants) when the provider failed to furnish liability insurance as required under the guidelines.[4] While we recognize |fithat the state, in the administration of the program, was responsible for enrolling providers who met the qualifications set forth in the manual, we do not find that the state should be hable if it fails to insure that the guidelines were met. Rather, the provider has the obligation to comply with the guidelines. If he fails to do so, then the state should request compliance or terminate the provider from participation in the program. To hold otherwise would place an unreasonable burden on the state and would have a far reaching effect on the liability of the state in administering programs such as the one involved in this case.
Accordingly, we do not find the state hable to plaintiff. The court of appeal erred in holding otherwise. We must reverse.

DECREE

For the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the trial court dismissing plaintiff’s suit is reinstated.
WATSON, J., dissents believing the court of appeal was correct.

 Pursuant to Rule IV, Part 2, § 3, Kimball, J. was not on the panel which heard and decided this case. Charles A. Marvin, Chief Judge, Court of Appeal, Second Circuit, sitting in place of Justice James L. Dennis.

.Plaintiff also filed a separate suit against Robert Allen for damages for personal injuries received in the accident. The suit was settled upon receipt by plaintiff of $25,000 paid by State Farm Mutual Automobile Insurance Company under the uninsured motorist provisions of the policy issued in favor of Allen. Allen was discharged in bankruptcy.

. 625 So.2d 600 (La.App. 3d Cir.1993).

. 630 So.2d 782 (La.1994).

. In Sunlake Apartment Residents v. Tonti Dev. Corp., 602 So.2d 22 (La.App. 5th Cir.), writs denied, 607 So.2d 558-59 (La.1992), apartment residents brought suit against the apartment owners, contractors, architect and insurers to recover for fire damage due to alleged faulty construction and the architect third-partied the city and state that had approved the plans. In denying liability against the city and state, the court stated:
[S]ince the Supreme Court stated in Fowler v. Roberts, 556 So.2d 1, 7 (La.1989), "The determination whether a particular duty should be imposed on a particular governmental agency is a policy question,” we find no overriding policy consideration-to impel us to impose on these governmental entities a duty that not only would entail potential liability extending into the distant future and enormous financial impact on the public treasury, but also would in whole or in part relieve architects, contractors and building owners of their liability for faulty construction or construction in violation of fire and building codes and thus make the public treasury an insurer for their negligence.
602 So.2d at 26.