| ¡WHIPPLE, Judge.
In this writ application, defendant, the State of Louisiana, through the Department of Environmental Quality (“the DEQ”), challenges the trial court’s denial of its exception pleading the objections of no cause of action and prescription. For the following reasons, we deny the writ application.
FACTS AND PROCEDURAL HISTORY
On October 1, 1990, plaintiff, Debra Williams, individually and as legal tutrix of her minor children, filed a “Petition for Wrongful Death and Survival Rights,” seeking damages for the death of her husband, Charles Williams, Jr., who was killed on July 30, 1990. The petition alleged that on the date of his death, Mr. Williams, a refuse collector employed by Waste Management of South Louisiana, Inc., was delivering garbage and refuse to the Ashland Landfill in Terre-bonne Parish when he was struck and killed by another vehicle. The Ashland Landfill is a solid waste disposal facility operated by the Terrebonne Parish Consolidated Government (“TPCG”), pursuant to a solid waste disposal permit issued by the DEQ. The accident occurred while Mr. Williams was operating the controls on the outside of his vehicle, and a second vehicle, operated by an employee of Galliano Contractors, Inc., pinned and crushed him between the two vehicles.
The DEQ was not named as a defendant in the original petition. Rather, the DEQ was added as a defendant in plaintiffs first amended petition, which was filed on October 1, 1992. The bases of plaintiffs claims against the DEQ were the DEQ’s alleged failure to properly monitor the actions of the landfill permittee, TPCG, who was allegedly operating the landfill in violation of its permit by not having any or the appropriate number *297 of flagmen or traffic control attendants, and the DEQ’s alleged failure to cite and penalize TPCG for violation of the permit requirements.
18In response to the first amended petition, the DEQ filed a peremptory exception raising the objections of no cause of action and prescription on January 25, 1996. Through these exceptions, the DEQ argued that (1) the original and amending petitions failed to state a cause of action against it, because (a) the allegations of the petitions were factually deficient and (b) even assuming the allegations were factually sufficient, the claims were legally foreclosed by application of LSA-R.S. 9:2798.1 (commonly referred to as the discretionary function exception); and (2) the claims made against the DEQ were prescribed by the passage of more than one year since the date of the accident.
Thereafter, on March 7,1996, plaintiff filed a second amended petition, more thoroughly setting forth her claims and setting forth additional claims against the DEQ. Following a hearing on the exceptions held on March 22, 1996, the trial court rendered judgment denying the exceptions.
The DEQ filed a writ application with this court, arguing that the trial court erred in three respects: (1) in failing to conclude that plaintiffs petition did not state a cause of action; (2) in failing to conclude that plaintiffs claims were foreclosed by LSA-R.S. 9:2798.1; and (3) in failing to conclude that plaintiffs claims were prescribed when the DEQ was added as a defendant.
On October 1, 1996, this court denied the DEQ’s writ application. Williams v. Galli-ano, 96-0690 (La.App. 1st Cir. 10/1/96). The DEQ then applied to the Louisiana Supreme Court for review of this court’s action. On December 6, 1996, the Louisiana Supreme Court granted the DEQ’s application for review and remanded the matter to this court for its consideration and opinion, after briefing and argument. Williams v. Galliano, 96-2532 (La.12/6/96), 684 So.2d 404.
LEXCEPTION RAISING THE OBJECTION OF NO CAUSE OF ACTION
The peremptory exception raising the objection of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy under the facts alleged in the petition. Cavin v. Chevrolet, Inc., 95-1878, p. 3 (La.App. 1st Cir. 5/10/96); 673 So.2d 654, 656. For purposes of this exception, no evidence may be introduced to support or controvert the exception, and the court must accept all factual allegations of the petition as true. LSA-C.C.P. arts. 927, 931; Roberts v. Sewerage and Water Board of New Orleans, 92-2048, p. 1 (La.3/21/94); 634 So.2d 341, 342-343.
When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding a cause of action stated. Matheny v. Greer, 95-1341, pp. 3-4 (La.App. 1st Cir. 2/23/96); 668 So.2d 1359, 1361, writ denied, 96-0737 (La.5/10/96); 672 So.2d 923.

Sufficiency of Factual Allegations

The DEQ first argues that the trial court erred in denying its exception raising the objection of no cause of action, because plaintiffs petitions do not plead sufficient facts, but merely contain conclusory statements. To withstand this exception, the petition must set forth the material facts upon which the cause of action is based. It is insufficient for a petition to simply state legal or factual conclusions without setting forth the facts which support the conclusions. Kahn v. Jones, 95-259, p. 7 (La.App. 3rd Cir. 11/2/95); 664 So.2d 700, 704; Butler v. Reeder, 93-764, p. 2 (La.App. 5th Cir. 3/16/94); 635 So.2d 1206, 1207.
|5In her original petition, plaintiff sets forth in detail the events leading to her husband’s death. In asserting a claim for negligence against the DEQ, plaintiff, in her first amended petition, alleged the following:

E. NEGLIGENCE OF STATE OF LOUISIANA

(1) Failure of the [DEQ] to properly monitor the actions of landfill permittee
*298 [TPCG] when it knew or should have known the TPCG was operating the Ashland landfill in violation of its own permit by not having any nor the appropriate number of flagmen, or traffic control attendants.
(2) Failure of the [DEQ] to cite and penalize TPCG or require the Ashland landfill be maintained and operated with flagmen or traffic control attendants.
(3) All other acts of negligence in violation of state and [sic] laws.
(4) All other acts of negligence which may be proven at the trial of the matter hereafter.
Additionally, in her second amended petition, plaintiff more fully set forth her allegations against the DEQ, by restating the allegations of subsections (1) and (2) above and adding the following subsections:
(3) Failure of the [DEQ] to follow state law by allowing TPCG to operate the Ashland Landfill without traffic control attendants or flagmen and create an unreasonable risk of harm to users of the landfill who did not have audible reverse alarms;
(4) Failure of the [DEQ] to follow state law by allowing TPCG to operate the Ashland Landfill in violation of its application permit and not enforcing the permit requirements or penalize the TPCG for its violations;
(5) Failure of the [DEQ] in violating state law when it had actual notice and/or constructive notice that TPCG was operating the Ashland Landfill in violation of its permit by not having mandated flagmen and/or traffic control attendants;
(6) Failure of the [DEQ] to promptly and frequently monitor TPCG’s operation of the Ashland Landfill to ensure that TPCG was not violating its permit application;
(7) Failure of the [DEQ] to properly supervise TPCG’s operation of the Ash-land Landfill to ensure compliances [sic] of its permit application when the state’s own enforcement officer | e,indicated the actions of TPCG would violate the permit mandates as to traffic control attendants and/or flagmen;
(8)Liability of the [DEQ] in solido with TPCG for not taking steps to ensure permit compliance when it had actual notice and/or constructive notice of TPCG’s violation of its permit.
The allegations of these paragraphs set forth the following material facts to support a cause of action against the DEQ: The permit granted by the DEQ to TPCG mandated the use of traffic control attendants and/or flagmen. In violation of the permit, TPCG did not have any, or at least not the appropriate number, of flagmen or traffic control attendants on duty at the Ashland Landfill. The DEQ had actual or constructive notice of this violation of the permit, but nonetheless allowed TPCG to operate the landfill without traffic control attendants or flagmen. The DEQ failed to properly and adequately monitor TPCG’s operation of the landfill to ensure compliance with the permit and failed to cite or penalize TPCG for its failure to comply with the permit requirements. This failure of the DEQ to ensure permit compliance by TPCG with the permit created an unreasonable risk of harm to users of the landfill (such as Mr. Williams).
Considering the petitions filed by plaintiff, we conclude that plaintiff has alleged sufficient, material facts, and not merely conclu-sory statements and, therefore, find no merit to this argument by the DEQ. However, we must next address the issue of whether these factual allegations afford plaintiff a legal remedy.

Remedy Afforded Under Facts Alleged

The DEQ next argues in brief that plaintiff has failed to establish a cause of action because the DEQ had no duty to plaintiff under the facts alleged and because any alleged negligent actions by the DEQ are insulated by the ^discretionary act and policymaking immunity provided by LSA-R.S. 9:2798.1. We disagree.
Whether a duty is owed is a question of law. Governmental agencies in the performance of governmental functions may be subjected to the imposition of certain *299 duties, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. The determination of whether a particular duty should be imposed on a particular governmental agency is a policy question. Berry v. State, Department of Health and Human Resources, 93-2748, pp. 4-5 (La.5/23/94); 637 So.2d 412, 414.
Additionally, LSA-R.S. 9:2798.1 confers immunity on public entities for policymaking or discretionary acts. This statute provides, in pertinent part, as follows:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of them lawful powers and duties.
However, this statute does not protect against legal fault or negligent conduct at the operational level. Rather, it only confers immunity for policy decisions, i.e., decisions based on social, economic or political concerns.
In Fowler v. Roberts, 556 So.2d 1, 15 (La.1989) (on rehearing) (citing Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)), the Louisiana Supreme Court adopted a two-step test for determining when this exception applies. First, the exception does not apply when a statute, regulation, or policy specifically prescribes a course of action, i.e., where there is no element of choice or discretion involved. Second, the exception only confers immunity where the discretionary action involves the permissible exercise of a policy judgment grounded in social, economic or public policy. Fowler, 556 So. 2d at 15; Chaney v. National Railroad Passenger Corporation, 583 So.2d 926, 929 (La.App. 1st Cir.1991).
In arguing that plaintiffs petitions are legally insufficient, i.e., that they fail to establish a claim for which there is a remedy afforded by law, the DEQ argues that pursuant to the authority granted it by LSA-R.S. 30:2154, the DEQ, through its regulations, has delegated the responsibility of ensuring adequate worker safety in the operation of a landfill to the landfill operator. The DEQ further contends that the delegation of this responsibility was entirely within its policy-making prerogative. Thus, the DEQ argues, it had no responsibility to assume this duty for itself, and its actions in delegating the responsibility for creating and enforcing safety requirements on its landfill operators are insulated by the discretionary act and policy-making immunity provided by LSA-R.S. 9:2798.1.
Revised Statute 30:2154(B)(1) (prior to amendment by Acts 1993, No. 555, § 1) directed the Secretary to adopt and promulgate rules and regulations for the disposal of solid wastes, including rules and regulations governing “disposal site ... operation.” However, we do not agree with the DEQ that this directive of LSA-R.S. 30:2154(B)(1) allowed it to reheve itself of ah responsibility with regard to safety in disposal site operations.
We note that the cause of action which plaintiff seeks to assert against the DEQ is based on the DEQ’s alleged failure to properly monitor the Ashland Landfill for compliance with permit requirements, which plaintiff alleged included the requirement that flagmen or traffic control attendants be on duty at the landfill. In stating the pohcy of the Louisiana Environmental Quahty Act (“the Act”), LSA-R.S. 30:2001 et seq., the Louisiana Legislature has declared that “[i]t is necessary and desirable for the protection of the pubhc welfare and property of the people of Louisiana that there be maintained at all times ... strictly enforced | aprograms for the safe and sanitary disposal of solid waste.” (Emphasis added). LSA-R.S. 30:2002(2). Subsection (3) of LSA-R.S. 30:2002 further provides as follows:
It is necessary and essential to the success of the regulatory program established in this Subtitle that the enforcement procedures include unannounced regular inspections of all facilities which may be regulated by this Subtitle or any facility in violation of this Subtitle. (Emphasis added).
Revised Statute 30:2011(D) sets forth the powers and duties of the Secretary of the *300 DEQ, and subsection (D)(13) specifically imposes a duty on the Secretary to conduct inspections and investigations and enter facilities as provided in LSA-R.S. 30:2012. Section 2012(D), at the time plaintiffs cause of action arose in 1990, required that a monitoring inspection of all facilities operating under authorization derived from the Act be made at least once annually. Additionally, the Secretary was required to promulgate guidelines for additional monitoring inspections of certain facilities. LSA-R.S. 30:2012(D) (prior to amendment by Acts 1993, No. 270, § 1). One of the stated purposes of these inspections is to determine whether a violation of a provision of the Act or any rules, regulations or orders issued pursuant to the Act has occurred. LSA-R.S. 30:2012(A)(4). Thus, the directive of LSA-R.S. 30:2154(B)(1) that the DEQ adopt and promulgate regulations governing disposal site operations clearly did not reheve it of its duty to monitor and inspect the facility to insure compliance with requirements of the Act and with its own rules and regulations imposed on landfill per-mittees.
Rather, these statutes, when read together, plainly impose a duty on the DEQ to monitor landfill sites, such as the Ashland Landfill, to enforce compliance by the per-mittee with the rules and regulations imposed upon the permittee. This duty, which was imposed for the broad protection of the public, see LSA-R.S. 30:2002(2), would obviously extend to encompass the risk of harm to a user of the [ ^landfill on the premises for the purpose of disposal of solid waste. Additionally, because these statutes specifically prescribe a course of action, i.e., the conducting of monitoring inspections on at least an annual basis, there is no element of choice or discretion involved, and immunity cannot be conferred by LSA-R.S. 9:2798.1. See Fowler, 556 So.2d at 15.
By so holding, we do not find that the DEQ is the insurer of the public against any and all alleged negligent acts or permit violations of a permittee.[1] Rather, we merely hold that the DEQ has a statutory duty to monitor solid waste landfills for compliance with rules and regulations imposed upon the permittee and that breach of this duty to monitor may serve as a basis for a finding of liability. Liability for an alleged breach of this duty will obviously be dependent upon the facts and circumstances of each particular case, as proven.
Thus, we find no merit to the DEQ’s argument that no duty existed under the facts alleged in plaintiffs petition or that any alleged negligent acts by the DEQ are shielded by the policymaking or discretionary acts exclusion found in LSA-R.S. 9:2798.1. We, therefore, find no error in the trial court’s denial of the DEQ’s exception pleading the objection of no cause of action.
JnEXCEPTION RAISING THE OBJECTION OF PRESCRIPTION
The DEQ finally argues that the trial court erred in denying its exception raising the objection of prescription in that plaintiffs first amended petition, naming the DEQ as a defendant, was filed more than one year after the accident in question.
If a plaintiffs claims are not pre-. scribed on the face of the petition, the burden is on the party raising the objection of prescription to prove the facts to support the *301 objection. Tranum v. Hebert, 581 So.2d 1023, 1030 (La.App. 1st Cir.), writ denied, 584 So.2d 1169 (La.1991). However, if on the face of the petition it appears that preseription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the preseriptive period. Younger v. Marshall Industries, Inc., 618 So.2d 866, 869 (La.1993).
Generally, in the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations thereof are accepted as true. Our Lady of the Lake Hospital v. Vanner, 95-0754, p. 3 (La.App. 1st Cir. 12/15/95); 669 So.2d 463, 464. It appears from the transcript of the hearing that the DEQ did not put on any evidence in support of its plea of prescription. Thus, we must look to the petition and amending petitions to determine whether the facts stated therein, if accepted as true, sufficiently allege a suspension or interruption of prescription. Vincent v. Tusch, 618 So.2d 385, 385-386 (La. 1993)(per curiam).
The original petition alleges that Mr. Williams’ death was caused in part by the negligence of TPCG in, among other acts or omissions, its failure to employ traffic attendants and flagmen to direct vehicles in the proper and safe unloading of refuse being hauled onto the dump site. In the amending petitions, plaintiff alleges that the DEQ negligently failed to adequately monitor the landfill for | ^compliance with permit requirements, including the requirement for on-duty flagmen or traffic control attendants, and that the DEQ was negligent in failing to take steps to ensure permit compliance when it had actual or constructive notice of this permit violation. The second amending petition further alleges that TPCG and the DEQ are solidarity liable for the accident.
Delictual actions are subject to a liberative prescription of one year, commencing to run from the day injury or damage is sustained. LSA-C.C. art. 3492. The interruption of prescription against one solidary obligor is effective against all solidary obligors. LSA-C.C. arts. 1799, 3503. Additionally, Civil Code article 2324, prior to amendment in 1996, provided that interruption of prescription against one joint tortfeasor interrupts prescription as to all joint tortfeasors, whether the obligation is joint and divisible or solidary. LSA-C.C. art. 2324(C)(prior to amendment by Acts 1996, First Extraordinary Session, No. 3, § 1, effective April 16, 1996); Cavalier v. Cain’s Hydrostatic Testing, Inc., 94-1496, p. 13, n. 9 (La.6/30/95); 657 So.2d 975, 983, n. 9.
Assuming the allegations of the petitions are true, TPCG and the DEQ could share liability, as joint tortfeasors, for the damages resulting from the Galliano Contractors, Inc. vehicle backing in to Mr. Williams, and pinning and crushing him between that vehicle and his own. See Vincent, 618 So.2d at 386. Thus, the filing of suit against TPCG had the effect of interrupting prescription as to the DEQ. The trial court properly denied the DEQ’s exception raising the objection of prescription.
CONCLUSION
For the above and foregoing reasons, the writ application of the DEQ is denied.
WRIT DENIED.
FITZSIMMONS, J., dissents and assigns reasons.

. In arguing that it owed no duty to plaintiffs decedent in the instant case, the DEQ relies upon the Louisiana Supreme Court decision of Berry v. State, Department of Health and Human Resources, 93-2748 (La.5/23/94); 637 So.2d 412. In Berry, the Supreme Court found that any duty of the DHHR to administer the Medical Assistance Program did not impose liability on the DHHR to third persons when a provider under the program failed to furnish liability insurance as required under the guidelines of the program. Berry, 93-2748 at p. 5; 637 So.2d at 414-415. In concluding that no liability existed, the Supreme Court stated that "[t]o hold otherwise would place an unreasonable burden on the state and would have a far reaching effect on the liability of the state in administering programs such as the one involved in this case.” Berry, 93-2748 at p. 6; 637 So.2d at 415. However, we find Berry to be factually distinguishable from the present case and, thus, not controlling. The duty of the DEQ to monitor landfill permittees for compliance with rules and regulations imposed on the permittee is statutorily mandated, as part of the DEQ’s broad duty to protect the public in matters of environmental regulation. See LSA-R.S. 30:2002, 2003, 2011 & 2012; see generally Matter of American Waste and Pollution Control Company, 93-3163, pp. 8-9 (La.9/15/94); 642 So.2d 1258, 1262.