745 So.2d 1 (1999)
Kelly Darbonne CORMIER, et al.
v.
T.H.E. INSURANCE COMPANY, et al.
No. 98-C-2208.
Supreme Court of Louisiana.
September 8, 1999.
*3 Richard P. Leyoub, Atty. Gen., Edgar Dean Gankendorff, Lawrence Edward Marino, Lafayette, Counsel for Applicant.
Jeffrey M. Bassett, James P. Ryan, Morrow, Morrow, Ryan & Bassett, Opelousas, Joseph L. Wimberley, Jr., Vidrine & Wimberley, Church Point, Scott Venable, Counsel for Respondent.
Francisco H. Perez, Baton Rouge, Counsel for Dept. of Health and Hospitals, amicus curiae.
Donald Erwin Puckett, Baton Rouge, Counsel for Dept. of Wildlife and Fisheries, amicus curiae.
TRAYLOR, Justice.[*]
This case arises from an October 27, 1990, amusement ride accident in which Plaintiff sustained a head injury. At trial, the Department of Public Safety and Corrections (Department) and the ride owner-operator were each found 50% responsible for Plaintiff's injuries. The court of appeal affirmed the trial court in part and amended the judgment in part, reducing both the Department's fault and the Plaintiffs award of future medicals. 97-1143 (La. App. 3 Cir. 5/27/98); 716 So.2d 387. We granted the writ of the Department to determine whether the Department was negligent in causing Plaintiff's injuries for failing to implement the "Amusement Ride Safety Law," under La.Rev.Stat. 40:1484.1 through 40:1484.13[1] despite the legislature's repetitive denial of funding for the Program and the failure of the owner of the Scrambler, himself, to comply with the Safety Law. Because we find the Department is not negligent, we reverse and set aside the judgments of the trial court and court of appeal, render judgment in favor of the Department, and dismiss Plaintiff's claims with prejudice.

FACTS AND PROCEDURAL HISTORY
In 1985, the Louisiana Legislature enacted the Amusement Rides Safety Law (Safety Law), currently designated La. *4 Rev.Stat. 40:1484.1 through 40:1484.13. Under the Safety Law, as enacted at the time of the accident, the Department had a duty to adopt and issue rules for the inspection and licensing of amusement attractions operating within the state. La. Rev.Stat. 40:1484.3. The Safety Law barred operation of amusement rides until the issuance of a certificate of inspection. It also imposed upon amusement ride operators the duty to notify the state of future operations and request an inspection at least fifteen days before participating in any festival. La.Rev.Stat. 40:1484.4(C)(2). The Safety Law then imposed a duty upon the Department to inspect such rides. La.Rev.Stat. 40:1484.4(B). The Department delegated these duties to the State Fire Marshall. Between 1986 and 1989, the Fire Marshall researched, developed, and submitted at least three budget proposals to the legislature, all of which were rejected.
During the month of October, 1990, the Louisiana Yambilee Association (Association) hosted the Yambilee Festival in Opelousas, Louisiana, and contracted with Mitchell Brothers Amusements to provide amusement rides for the festival. In both 1989 and 1990, T.H.E. Insurance Company, Mitchell Brothers' insurer, inspected Mitchell Brothers' Scrambler and determined it to be in need of "emergency" repairs. On August 4, 1989, Mitchell Brothers was warned that the Scrambler was in need of emergency[2] and non-emergency repairs. On October 5, 1990, the inspector noted that the Scrambler remained in poor condition and warned Mitchell Brothers that the ride "should not operate" until California secondary latches were installed on all tubs. Notably, this installation would have brought the Scrambler into compliance with the manufacturer's safety bulletins dating back to 1975 and would have cost less than $250. The inspector re-examined the Scrambler two weeks later on October 18, 1990. Although he noted the overall condition of the Scrambler was "very much improved," his evaluation of the ride's safety remained "not good." Mitchell Brothers had, once again, failed to install secondary latches as well as make other repairs.
On October 27, 1990, Kelly Cormier and her boyfriend, Scotty Venable, took her three children, Blake, Nicholas, and Brooke Cormier, to the Yambilee Festival. Kelly accompanied two-year-old Brooke to the children's section and allowed Venable to chaperon four-year-old Blake and six-year-old Nicholas to ride the adult rides. Eventually, Blake and Nicholas rode the Scrambler unaccompanied. After the ride began, Blake panicked, struggled, and fell from the ride striking his head on a portion of the ride. He sustained a three inch laceration and a two-inch-long depression of his skull behind his right ear. Later that day, Blake underwent reconstructive surgery to elevate and reconstruct the depressed portion of the skull.
Kelly retained an attorney the day after the accident and later filed suit. At the time of trial, the Department was the only remaining defendant. At trial, the judge did not determine how the Plaintiff fell from the ride although several theories were advanced by expert and lay witnesses. Some witnesses opined that the door opened and Plaintiff was ejected by the physical forces of the ride and that California secondary latches may have prevented an injury in this manner. Also forwarded was a theory that Plaintiff laid his head on his brother's lap and escaped by sliding underneath the lap bar and locked door. The ride was later found with bent lap bars which, had that condition been present at the time of the injury, would have facilitated such an escape. The third and final theory was that Plaintiff slid from behind the lap bar and stood *5 on his seat, whereupon, the physical forces would have thrown him from the ride.
Witnesses for the Fire Marshall maintained that certificates of inspection would have been issued had the program been funded by the legislature. The Fire Marshall did not believe he had the statutory authority to remove employees or reallocate funds from extant programs to implement the Safety Law. The Fire Marshall's Office ranked the Safety Law last among its funding priorities and fire safety programs were billed top priority.
A witness for Mitchell Brothers conceded the company's non-compliance with the Safety Law which it considered "dormant." Deltus Mitchell testified that he would have installed secondary latches for less than $250 if his insurance company mandated that he do so. However, he further conceded other recommendations, even for emergency repairs, were not followed because he claimed the insurance company said it did not "really" need to make the repairs.
After a bench trial, the court found the Department negligent in causing Plaintiff's injuries and assigned fault equally between the Department and Mitchell. The trial court stated its reasons for finding the Department at fault:
I cannot accept the argument that simply because the legislature did not provide the up-front funding of this agency where it was shown that the fees would produce in excess of four hundred thousand dollars a year, which is more than they needed to enforce it, that their failure to just put the up-front money was the real reason why they didn't get into the business of enforcing this law. My personal opinion, I don't think they wanted to. However, I'm going to make this statement and I hope the legislators who pass these laws listen to this. They cannot take it upon themselves to make a finding that there is a danger with respect to particular activity in this state, pass legislation to remedy that danger and then just turn their backs and walk away from it. They can't do that. The law does not permit them to do that. Once they actively take a role in attempting to remedy a situation, they have the obligation to see it all the way through ... They had an obligation and an affirmative duty to go forward with the funding of this, and for that reason I find them to be at fault.
On appeal, the court of appeal reduced the fault of the Department to 33 1/3% and reduced Plaintiff's future medical award. The Department and Plaintiff both sought writs with this court. We granted the Department's writ application.

STANDARD OF REVIEW
Normally, a trial court's findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Daye v. General Motors Corp., 97-1653 (La.9/9/98); 720 So.2d 654, 659, rehearing denied (La.10/30/98); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Although deference should be accorded to the factfinder, the reviewing court has a constitutional duty to review facts. Daye, 720 So.2d at 659. The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. After a thorough review of the record, we find the trial court's determination that the Department was negligent for its nonfeasance was not a reasonable one. Therefore, we find the court committed manifest error by assigning any percentage of fault in Plaintiff's injuries to the Department.

LAW AND DISCUSSION
In 1985, the legislature enacted the Safety Law and, in doing so, burdened the Department with an affirmative duty to protect the public through the adoption and issuance of rules regarding the safety of amusement rides. However, the legislature also rejected several budget requests *6 submitted to it by the Department for the purposes of implementing the law. The trial court determined that the legislature refused to fund the Safety Law but, nevertheless, found the Department liable based on the erroneous assumption that start-up funding could have been later recouped from inspection fees. The state must seek appropriations on a yearly basis. La. Const. Art. 7, § 10(D); La.Rev. Stat. 39:33. A program may not be operated at a deficit and the losses recouped when the program begins to earn a profit. The Department is under an obligation to return excess revenue to the state coffers and cannot retain it for its programs. La. Rev.Stat. 39:82. Nor can departments shuffle appropriations or employees from one program to another without legislative authorization. La.Rev.Stat. 39:36; La.Rev.Stat. 39:32. Funds may only be reallocated if specifically allowed by statute, e.g., to meet unforeseen circumstances or to correct errors. See La.Rev.Stat. 39:71(C) and La.Rev.Stat. 39:77.
The trial court focused on what it deemed improper acts on the part of the legislature for enacting a law which it later refused to fund. However, the trial court had no legal basis to review the budgetary decisions of the legislature, nor to impute what it determined to be a wrongful act of the legislature to the Department.[3] The court of appeal rejected all arguments raised by the Department and affirmed the trial court's finding that the Department was negligent in not adopting and enforcing the Safety Law. We reverse and set aside the judgments of both the trial court and court of appeal and will address anew any negligence of the Department in Plaintiffs' injuries.
The Department's main assignments of error involve the Public Duty Doctrine, Discretionary Immunity, and negligence analysis. We will address each of these assignments of error in turn.

Public Duty Doctrine
At the outset, we reject the application of the Public Duty Doctrine. Although the validity of the Public Duty Doctrine has remained somewhat speculative in the lower courts, this court in Stewart v. Schmieder, 386 So.2d 1351, 1358 (La.1980), and Fowler v. Roberts, 556 So.2d 1 (La.1989), rejected the doctrine. Viewing the holdings of Stewart and Fowler together, this court has found that even though the public nature of a duty does not preclude liability on the part of a governmental entity, this does not mean a governmental body will be liable each time a person's injury could have been prevented by a public official's proper performance of his duty. Id. Duty and liability must be decided according to the facts and circumstances of each case. Fowler v. Roberts, 556 So.2d at 7. This is accomplished under the duty-risk analysis. Berry v. State Through Dep't of Health and Human Resources, 93-2748 (La.5/23/94); 637 So.2d 412. Finding that this case may be properly decided using the duty-risk analysis, we will not embark on an any further discussion of this assignment of error.

Discretionary Immunity
Generally, "Discretionary Immunity" under La.Rev.Stat. 9:2798.1 applies to specific fact situations which satisfy the rule enunciated in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Under Berkovitz, the court must first consider whether the government employee had an element of choice and his course of action was not specifically prescribed by the statute, regulation, or policy. Conduct cannot be discretionary unless it involves an element of judgment or choice. Id. at 1958. *7 Thus, discretionary immunity will not apply when a specific course of action is prescribed as the employee has no rightful option but to adhere to the directive. Id. On the other hand, when discretion is involved, the court must then determine whether that discretion is the kind shielded by the exception: one grounded in social, economic, or political activity. Fowler v. Roberts, 556 So.2d 1 (La.1989); Kniepp v. City of Shreveport, 609 So.2d 1163 (La. App. 2 Cir.1992), writ den. 613 So.2d 976 (La.1993); Rick v. State Dep't of Transp., 93-1776, 93-1784 (La.1/14/94); 630 So.2d 1271. If it is, then the doctrine applies and the employee or agency is insulated from liability; if it is not, the employee or agency is liable for any negligence. Simeon v. Doe, 618 So.2d 848 (La.1993).
Applying this test to the facts of the instant case, we find that the Safety Law mandated the Department to a specific course of action: to adopt and issue rules for and conduct inspections of amusement rides. Thus, the Department could not be exempt from liability for failure to act under the statute. However, the question that remains is whether the Department was negligent in causing Plaintiff's injuries for failing to do so, despite the fact that the legislature denied funding for the Program and the fact that the owner supplied the Department with no notice that the Scrambler was operating at the Yambilee Festival. We now turn to a negligence analysis to determine this issue

Negligence
Most cases alleging negligence on the part of a public body have been analyzed by this court under the duty-risk analysis. Stroik v. Ponseti, 96-2897 (La.9/9/97); 699 So.2d 1072; Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94); 646 So.2d 318; Berry v. State Through Dep't of Health and Human Resources, 93-2748 (La.5/23/94); 637 So.2d 412; Roberts v. Benoit, 605 So.2d 1032 (La.1991). In the classic duty-risk analysis, one of the inquiries the court must answer is: What, if any, duties were owed by the respective parties? Mart v. Hill, 505 So.2d 1120, 1122 (La.1987). The particular facts and circumstances of each individual case determines the extent of the duty and the resulting degree of care necessary to fulfill that duty. Kent v. Gulf States Utilities, 418 So.2d 493 (La.1982). A plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached, Daye, 720 So.2d at 659; Berry v. Dep't of Health and Human Resources, 637 So.2d at 414.
When a duty is imposed by statute, the court must attempt to interpret the legislative intent as to the risk contemplated by the legal duty, often resorting to the court's own judgment of the scope of protection intended by the legislature. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970); Dixie Drive It Yourself System New Orleans v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. Hill v. Lundin & Associates, Inc., 256 So.2d at 622-23. Courts consider various policy factors that the legislature might consider, such as whether the imposition of a duty would result in an unmanageable flow of litigation; ease of association between the plaintiff's harm and a defendant's conduct; economic, social, and moral implications on similarly situated parties; the nature of defendant's activity; the direction in which society and its institutions are evolving; and precedent. See generally Meany v. Meany, 94-0251 (La.7/5/94); 639 So.2d 229, 233; Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151 (La.1988); Entrevia v. Hood, 427 So.2d 1146 (La.1983).
*8 Whether a particular duty should be imposed on a particular government agency is a policy question to be determined by the court. Id., Berry v. State, Through Dep't of Health and Human Resources, 637 So.2d at 414; Faucheaux v. Terrebonne Consol. Gov't, 615 So.2d at 292. Governmental agencies may be subjected to the imposition of duties by legislation, ordinance or rule of law, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. Fowler v. Roberts, 556 So.2d 1 (La.1989). The determination of the risk contemplated is a policy question. This court's role is to determine whether there is any jurisprudential or statutory rule, or policy reason why, under the facts and circumstances of the case, the state would owe a duty to compensate plaintiff for his injuries. Id.; Faucheaux, 615 So.2d at 292.
There is no question that the Department had an affirmative statutory duty to adopt and issue rules for amusement attractions for the protection of the public. However, under the facts and circumstances of this case, we find that the Department owed no duty to the Plaintiff for the injuries he sustained and therefore owes no duty to compensate Plaintiff for those injuries. The reason we so find is twofold:
First, the Safety Law created many duties for both the Department and the operator of amusement rides. The Department had a duty to adopt and issue rules for amusement rides. La.Rev.Stat. 40:1484.3. In our view, this is where the duty ended. The duty to inspect amusement rides is only activated once a ride operator requests an inspection from the Department. Had the operator fulfilled his duty to request an inspection before operating the Scrambler under the Safety Law, then the Department's duty to inspect would have been triggered. La.Rev. Stat. 40:1484.4(A), (B), and (C). We cannot reach the Department's duty to inspect because it had no notice and, therefore, no duty to conduct a safety inspection for the Scrambler. Upon a thorough review of the record and applicable law, we find that the duty owed by the Department was limited to the duty to adopt and issue rules. Assuming, arguendo, that the ride operator would have satisfied his duty to request an inspection, and an inspection occurred prior to this accident, we would not automatically assign liability to the Department as a licensing body for the malfeasance of the third party ride operator.[4] We leave the resolution of this hypothetical situation for another day.
We hold that, as a matter of public policy, the Department owed no duty to *9 Plaintiff, the victim of the tort of a private third party, for the injuries he sustained as a result of riding an amusement ride which was not licensed or inspected by the State. To hold otherwise would place too onerous a burden upon the State and would have a far-reaching effect on the liability of the state where licensing programs are concerned. Plaintiff failed to prove the element of duty and this failure is fatal to his case. Thompson v. State, 97-0293 (La.10/3/97); 701 So.2d 952, 955; Faucheaux v. Terre bonne Consol. Govt., 615 So.2d 289, 292 (La.1993).
Thus, we conclude that while the Department had a duty to adopt and issue rules for the inspection of amusement rides under the Safety Law, that duty did not impose upon it a liability to third parties injured on amusement rides. Had the Department received notice from the operator of the Scrambler as required by the statute, perhaps we would be inclined to find liability on the part of the Department in the proper fact situation. However, this is not the factual situation with which we are faced in the instant matter. Therefore, the general duty imposed upon the Department under the Safety Law was not a duty to the Plaintiff in particular. Because Plaintiff did not sufficiently prove the Department negligent, we reverse and set aside the judgments of the trial court and court of appeal, render judgment in favor of the Department, and dismiss Plaintiffs claims with prejudice.

CONCLUSION
For the foregoing reasons, the judgment of the trial court and court of appeal are vacated, reversed, and set aside. We render judgment in favor of the Department and dismiss Plaintiff's claims with prejudice.

DECREE
REVERSED.
LEMMON and VICTORY, JJ., concur.
KNOLL, J., dissents and assigns reasons.
KNOLL, Justice, dissenting.
For the following reasons, I respectfully dissent from the majority's determination that the Department of Public Safety and Corrections (Department) did not owe a duty to plaintiff by failing to implement the Amusement Rides Safety Law (Safety Law). "[I]n the absence of the requisite relationship, there generally is no duty to protect others against harm from third persons." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 56, at 385 (5th ed.1984). However, here the Legislature specifically assumed the duty to protect the amusement riding public from unsafe rides and delegated this duty to the Department, creating the requisite relationship. This duty imposed by the Legislature is attended with the responsibility to formulate rules necessary to carry out its function as inspector of amusement rides. Without having implemented standards to guide the inspection process, the Department's omission leaves the Safety Law toothless and the majority's rationale effectuates a veto of the Legislature's intent and purpose.
The majority correctly states that "[w]hen a duty is imposed by statute, the court must attempt to interpret the legislative intent as to the risk contemplated by the legal duty, often resorting to the court's own judgment of the scope of protection intended by the legislature." Cormier v. T.H.E. Ins. Co., 98-C-2208, slip. op. at 7 (La. 9/8/99), 745 So.2d 1, 7. The Legislature's intended scope of protection was clearly set forth in House Concurrent Resolution 279 of the 1992 Regular Session:
THEREFORE, BE IT RESOLVED that the Legislature of Louisiana does hereby urge and request the secretary of the Department of Public Safety and Corrections to implement the provisions of the Amusement Rides Safety Law and to adopt and issue rules required *10 therein with the utmost diligence and promptness in the interest of public safety.

1992 La. Acts 244, § 2 (emphasis supplied); see also La.R.S. 40:1484.3 ("The secretary shall adopt and issue rules ... for the protection of the public."), :1484.7 (stating that use of an amusement ride will be prohibited if a substantial probability of death or serious physical injury to the public from its continued use is found and further use will be prohibited until the ride is made safe for public use). The public policy clearly and unambiguously expressed by the Legislature governs and answers the very question of who the Safety Law was intended to protect: members of the public, like Blake Cormier, who are injured while enjoying amusement rides and suffer serious injuries which could have been prevented had the Safety Law been enforced by those duty-bound by the law.
The failure of the Legislature to fund a program under the Safety Law is immaterial to the existence of this duty owed by the Department. As stated by Judge Saunders in his concurrence with the Third Circuit's opinion in the case sub judice, "each citizen of the state is under an obligation to refrain from doing harm to others and, the fact that we may not have the resources to keep our property in good order, does not absolve us from harm we may cause by failing to do so. Subdivisions of the state should be held to the same standard as the people they govern." Cormier v. T.H.E. Ins. Co., 97-1143 (La. App. 3 Cir. 5/27/98), 716 So.2d 387, 398.
In my view, the issue is not whether a duty is owed, as clearly it is, but rather a causation question. Causation was a troublesome issue because it was not proven exactly how the child fell out of the ride. The trial court found the plaintiff proved three possible ways the child could have fallen out of the ride and concluded,
... I think that but for the absence of the State's intervention into the amusement ride business which it was mandated to do by its own statute, this accident probably would not have happened. And I find that simply because with adequate warnings which would have probably been there had the State done its duty under the statute, this child may never have gotten on this ride.
This issue was a very fact driven determination by the trial court. In my view, I cannot say the trial court was clearly wrong in finding the state partially at fault under its "but-for" analysis and would affirm the court of appeal.
NOTES
[*] Calogero, C.J., not on panel, recused. See Rule IV, Part 2, § 3.
[1] We denied plaintiff's writ application in this matter. 98-C-2156.
[2] The following emergency repairs were required: foot rest air locks; secondary "California" latches; and upper sweep bearings.
[3] See Louisiana Const. Art. III, § 16; Meredith v. Ieyoub, 96-1110 (La.9/9/97); 700 So.2d 478, 481; Louisiana Assn. Of Educators v. Edwards, 521 So.2d 390 (La.1988); Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963); Wall v. Close, 203 La. 345, 14 So.2d 19, 34 (1943).
[4] See Thompson v. State, 97-0293 (La.10/31/97); 701 So.2d 952, Wilson v. State Through Dep't of Public Safety and Corrections, 576 So.2d 490 (La.1991) [State is not insurer of the safety of its citizens]; Lambert v. Pepsico, Inc., 96-0648 (La.App. 4 Cir. 8/6/97); 698 So.2d 1031 [Where party has no custody or control over amusement ride, party cannot be held liable for injuries suffered by patrons caught in ride fire]; White v. State Through Dep't of Public Safety & Corrections, 93-2034 (La.App. 1 Cir. 10/7/94); 644 So.2d 684 [State liable where it issued a drivers' license to an applicant knowing of his dangerous medical condition]; Guilbeau v. St. Landry Parish Police Jury, 600 So.2d 859 (La.App. 3 Cir.1992) [duty found where police jury with custody of road failed to take precautions to keep roads in reasonably safe condition]; Morcos v. EMS, Inc., 570 So.2d 69 (La.App. 4 Cir.1990), Guillot v. Sandoz, 497 So.2d 753 (La.App. 3 Cir.1986) [licensing agency is not liable for its failure to suspend licence where driver exhibited indifference for the law and welfare of others]; State v. Joint Commission on Accreditation of Hospitals, 470 So.2d 169 (La.App. 2 Cir.1985) [inspector of medical equipment generally owes no duty to a subsequently injured party]; Guillot v. State Through Louisiana State Police, 364 So.2d 254 (La.App. 3 Cir.1978) [State not liable for death where it failed to revoke the driver's license and license plates as mandated under statute]; Dufrene v. Guarino, 343 So.2d 1097 (La.App. 4 Cir.1977) [duty to conduct fire inspection, even if done negligently or not conducted at all, does not render city liable for injuries to patron injured in fire]; Coppage v. Gamble, 297 So.2d 468 (La. App. 2 Cir.1974) [issuance of a license does not render the licensing authority liable for the offenses of the licensee].