hSTEVEN R. PLOTKIN, Judge.
We are called upon to decide whether an amateur-volunteer rescuer is owed a duty of reasonable care by a professional rescuer, and if so, does the doctrine of comparative fault and governmental immunity apply. We hold that a professional rescuer owes a duty of reasonable care to the *524 volunteer rescuer, comparative fault is applicable within a duty/risk analysis, but the doctrine of governmental immunity is inapplicable. For the reasons assigned, we affirm.
Facts
On November 5, 1989, Chip Caillouet, received a call from his neighbor, Eliska Schneider, asking for help. Mrs. Schneider told the plaintiff that she thought her husband had suffered a heart attack. When Caillouet arrived at the Schneiders’ house he discovered George Schneider lying on the sofa. After the plaintiff was unable to find a pulse, he and Mrs. Schneider rolled George onto the floor. Once George was on the floor, the plaintiff started giving him Cardio Pulmonary Resuscitation (CPR). Ms. Helen Tasker Caillouet, plaintiffs wife, called 911. Two Emergency Medical Technicians arrived on the scene in a New Orleans Emergency Medical Services (EMS) ambulance. Lisa Williams was a certified paramedic and Bruce Pizzolata was an Intermediate Emergency Medical 1 ¡/Technician. The EMTs started emergency aid on Mr. Schneider and at the request of the technicians, the plaintiff continued performing CPR. Subsequently, the EMTs decided to transport Mr. Schneider to Mercy Hospital for further medical treatment.
The technicians were unable to get the stretcher inside the home because of the narrow entrance to the house so they retrieved a trauma backboard from the ambulance. They put the patient on the trauma board and secured him by strapping him to the board. Since Mr. Schneider was about 6'4" and weighed over 300 pounds the EMTs requested the plaintiff to help them carry Mr. Schneider to the stretcher. The plaintiff testified that when it was time to lift Mr. Schneider the two EMT’s positioned themselves at his head with their back to the doorway and the plaintiff was at Mr. Schneider’s feet, facing the doorway. As the EMTs started lifting and moving the trauma board, the plaintiff was flexed forward in a crouched position. In the process of initiating the lifting motion the rotation caused the plaintiff to injure his back. The plaintiff did not tell the technicians to stop because he did not have time to say anything. After the patient was carried outside Caillouet continued CPR. When the ambulance departed the plaintiff returned to his house and laid down.
Bruce Pizzolata, one of the EMTs, testified that he did not recall the incident in question. He stated that at the time of the incident the New Orleans Health Services did not have a protocol regarding the lifting and transporting of patients. However, he had received training in lifting and carrying patients. In his training, he was taught the importance of everyone moving together and making certain that before you move that the person at the other end of the backboard was also ready to move. As to a volunteer who assists in transporting a large person, the volunteer 1¡¡would become a partner. In a situation where a huge individual is being transported on a board and a volunteer is assisting two EMTs, the EMTs should have been on each end of the board with the volunteer at the heavier end, which was not the situation in this case. On cross examination Mr. Pizzolata testified that he had not ever lifted a person and started moving forward without ensuring that everybody was ready to move at the same time. He also stated that he had never carried a spine board with two EMTs on one side and a volunteer on the other side. Lisa Williams, the other EMT, did not testify at trial.
Dr. Russell Levy, an orthopedist, saw the plaintiff for the first time on November 27,1989 and treated him until December 7, *525 1989. Dr. Levy did an MRI, which revealed “a big L5 disc”, and he recommended that the plaintiff see a neurosurgeon. Caillouet testified that he had no pre-existing back problems. The plaintiff then went to Dr. J. Ollie Edmunds, an orthopedic surgeon at Tulane Medical Center for care and treatment. An MRI was taken which showed the plaintiff had a left posterior herniated nucleus pulposus at L5-S1. Dr. Edmunds performed a lumbar discectomy and laminectomy on the plaintiff on December 18, 1989. At this time the plaintiff was forty-two years old. Dr. Edmunds stated that as a result of his back injury and the surgery caused by the jerking motion of the EMTs, the plaintiff has “a 10% permanent partial physical impairment of the whole person.” The trial court agreed with this finding.
Prior to the accident, plaintiff was doing film production work. At the time of his injury he was making $250 a day on some jobs and $500 a day on others. He testified that he had been working about three days a month, so he earned between $750 to $1,000 per month. The plaintiff stated that he had to refuse jobs after the incident because he could not do that kind of work. Further, he testified [ ¿that he could not lift the type of heavy equipment or spend the amount of time on his feet that is required in that type of work.
After trial the district court found in favor of the plaintiffs and awarded Cail-louet $200,000 in general damages, $20,000 for past and future medical expenses, and $125,000 for loss of income and earning ability. The plaintiffs wife, Helen Tasker, was awarded $5,000 for loss of consortium. Duty Risk
The Restatement of the Law of Torts (Second) § 472 states:
It is not contributory negligence for a plaintiff to expose himself to danger in an effort to save himself or a third person, or the land or chattels of the plaintiff or a third person, from harm, unless the effort itself is an unreasonable one, or the plaintiff acts unreasonably in the course of it.
In Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606, the Supreme Court discussed Fowler v. Roberts, 556 So.2d 1 (La.1989) and the application of the duty-risk analysis, rather than the public duty doctrine, to claims brought against employees of public entities. The court emphasized that reliance on the public duty doctrine is misplaced and stated that the court had never adopted its rule. La. R.S. 9:2798.1 exempts public entities for their employees’ discretionary acts. “However, where liability is based on a public entity’s non-discretionary acts, liability will be judged under the traditional duty-risk analysis. Fowler v. Roberts, supra.” Hardy v. Bowie, 744 So.2d at 613. In order to determine whether the discretionary function exception applies a court must consider whether the government employee had an element of choice.
If the employee had no discretion or choice as to appropriate conduct, there is no immunity. When discretion is involved, the | ñcourt must then determine whether that discretion is the kind which is shielded by the exception, that is one grounded in social, economic or political policy. If the action is not based on public policy, the government is liable for any negligence, because the exception insulates the government from liability only if the challenged action involves the permissible exercise of a policy judgment.
Id. Under the duty-risk analysis, plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the *526 duty breached. Berry v. State, Through Department of Health and Human Resources, 93-2748 (La.5/23/94), 637 So.2d 412, 414. “Governmental agencies in the performance of governmental functions may be subjected to the imposition of certain duties, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. The determination of whether a particular duty should be imposed on a particular governmental agency is a policy question.” Hardy v. Bowie, 744 So.2d at 614.
The trial judge found that based on the testimony of the technicians, someone who volunteers to help paramedics becomes part of their rescue team. Thus, the trial judge concluded that the plaintiff became a voluntary member of the EMS rescue team and the technicians owed him a duty of care for his safety. Therefore, even if the plaintiff did not say anything while they were lifting the board the technicians should have made sure that the plaintiff was ready prior to attempting to move the patient. By failing to do so the technicians breached the duty owed to the plaintiff. Considering all of the facts and circumstances of this case, the trial judge correctly held that the City is vicariously liable for the actions of the technicians.
| (¡Comparative Fault
In Watson v. State Farm Fire and Cas. Ins. Co., 84-2158 (La.1985), 469 So.2d 967, the court set out several factors to consider in allocating fault among the parties involved:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
In the instant case the EMTs were aware of the potential danger to each other and members of the rescue team if they did not take proper precautions when lifting the board. The risk of injury was great if the proper lifting technique was not followed, especially when the person being lifted was as heavy as the patient in this case. The EMTs were obviously more experienced and knowledgeable than the plaintiff regarding the lifting of a trauma board and they needed to ensure that the volunteer was correctly positioned before lifting. In this case there is a direct relationship between the EMTs failure to lift the board properly and plaintiffs resulting injury.
Governmental Immunity
The trial judge held that the defense under R.S. 9:2798.1 is only applicable to protect governmental actions at the policy or ministerial level. The trial court relied on Fowler and Sommer v. State DOTD, 97-1929 (La.App. 4 Cir. 3/29/00), 758 So.2d 923 for the proposition that R.S. 9:2798.1 does not apply to City employee actions at the operational level.
La. R.S. 9:2798.1 provides in pertinent part:
^Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
Governmental agencies in the performance of governmental functions may be subjected to the imposition of certain duties, the breach of which may result in liability for damages to those injured by a risk con *527 templated by that duty. In Fowler, the Supreme Court held that:
The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) proof that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).
In the instant case, the plaintiff had discretion in deciding whether or not to assist the EMTs in' getting Mr. Schneider out of the house. The EMTs, on the other hand, did not have the same choice. The EMTs requested the plaintiffs assistance in moving the patient. Even if the plaintiff had volunteered to help the EMTs, the EMTs would have had a duty to make sure that he was ready prior to lifting the spine board. In this case, the technicians had an even greater duty to insure the safety of the plaintiff given that they had asked him to participate in moving Mr. Schneider. The plaintiffs testimony established that the technicians breached the standard of care by not making the plaintiff aware that they were going to lift the board. Thus, the EMTs’ conduct was a cause in fact of plaintiffs injury. Dr. Edmunds also stated that due to the incident the plaintiff has a 10% permanent Impartial physical impairment of the whole person. Thus, all of the elements of liability have been proven.
Loss of Consortium
The plaintiff appeals the trial judge award of Ms. Tasker $5,000 for her loss of consortium. Ms. Tasker testified that the incident was a factor in the breakup of their marriage. She claimed that as a result of injuries to her husband she had to do more around the house and that her responsibilities for her child increased. In American Motorist v. American Rent-All, 579 So.2d 429 (La.1991), cited by the plaintiff, the injured spouse suffered extreme psychiatric problems, which required hospitalization and numerous medications. The spouse claiming loss of consortium also suffered from mental problems due to the incident. The alleged consortium damages in this case are not nearly as great. Further, Ms. Tasker and her husband were not divorced until nine years after the incident. Thus, the plaintiff fails to demonstrate that the trial court abused its discretion in awarding her $5,000 for this claim.
Conclusion
We agree with the trial court’s determination that someone who volunteers to help paramedics becomes part of their rescue team. In this case, the EMTs had requested plaintiffs assistance in transporting the patient and they owed him a duty to make sure he was lifting properly. By lifting the trauma board prior to the plaintiff being ready the EMTs breached that duty. In the instant case, the governmental immunity does not apply since the person making the claim is a volunteer and not a patient receiving care.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MURRAY, J., concurs in the result.