PEATROSS, J.
 

 [iThe plaintiffs, family members of the deceased John Arnold, brought this survival and wrongful death action against the Ouachita Parish Fire Department after Mr. Arnold perished in a fire at his mobile home. Finding that the plaintiffs failed to carry the burden of proving by a preponderance of the evidence that any negligence on the part of the fire department was a cause-in-fact of Mr. Arnold’s death, the trial court ruled in favor of the fire department, dismissing plaintiffs’ claims with prejudice. The trial court further held that, even if negligence and cause had been shown, the fire department is immune from liability under La. R.S. 9:2798.1.
 
 [1]
 
 Plaintiffs appeal. For the reasons stated herein, we affirm.
 

 
 *463
 

 FACTS
 

 The events giving rise to the present action are tragic for the Arnold family. At approximately 12:30 a.m. on December 20, 1998, Mr. Arnold and his son were in Mr. Arnold’s mobile home at the Red Oak Trailer Park in Ouachita Parish watching television. After declining his father’s request |j>that he spend the night, the son fixed his father a plate of food and went to his brother’s home, where he was living at the time.
 

 At 2:03 a.m., a neighbor, who had just moved into the mobile home park that day, called 911 to report that Mr. Arnold’s mobile home was on fire. The caller was connected to the main dispatcher with the Ouachita Parish Fire Department and spoke with Communications Officer Todd Robertson. The caller advised that he had just arrived from Virginia that day and moved into the trailer park; therefore, he was not certain of the specific address. The caller first provided the correct address of 1116 Washington Street, then changed that number to 1611 Washington Street, which does not exist. The caller further advised that the location was the Red Oak Trailer Park, across from the Porch Lounge. The caller related to the dispatcher that he could see smoke and flames through the windows of the mobile home.
 

 Mr. Robertson dispatched three units from different stations. One of the stations was only two blocks from the Red Oak Trailer Park. The dispatcher, however, failed to verify the address with the printout that shows the address from which the call originated; and, therefore, the responding units were sent to the to-correct municipal address. In addition, the dispatcher did not advise the units that the call was from a neighbor, not the occupant (so that the occupant may still be inside) and he failed to advise the units that the caller related to him that he did not see anyone outside the burning trailer, but that there was a car parked outside.
 

 | sAs a result of being provided an incorrect address, the responding units turned the wrong way down Washington Street, towards the nonexistent 1600 block, and continued in the wrong direction until they reached the Cheniere Dam, at which point they knew they were not in the right place. Meanwhile, the caller had apparently seen the fire trucks pass the trailer park and called the fire station a second time to alert the dispatcher that the units had gone past the trailer park and were traveling in the wrong direction. The dispatcher then relayed the correct address to the units. Once at the dam, however, only the smallest of the units, a pickup truck with a 250 gallon water tank usually used for grass fires, could turn around. The larger units had to continue a mile further to find a place large enough to turn around.
 

 The first unit on the scene of the fire was the small truck, which arrived 9 minutes after the call was placed. The testimony is consistent that this was 5-6 minutes longer than it should have taken the units to arrive from the stations. The firemen admitted that they did not know the location of the Red Oak Trailer Park, despite the fact that Washington Street was a main thoroughfare. One of the firemen was aware of the location of the Porch Lounge; however, a tape recording from the units’ radio revealed that it was not
 
 *464
 
 until the units had made it to the dam that the fireman informed the others, “Guys, the Porch Lounge is back that way but it’s the 1200 block.... ”
 

 Once on the scene, the small truck began spraying water on the exterior rear side of the mobile home. The testimony indicates that this is |4called an exterior approach and forces gas, toxic fumes and smoke into the interior of the structure. There was no search and rescue at this point. The testimony revealed that there were not enough firemen at the scene initially to enter the burning trailer. After the arrival of the additional units, however, there still was no search and rescue conducted. When the large units arrived, the exterior extinguishment continued until the fire was put out — approximately 37 minutes. It was not until that time that a fireman entered the mobile home to put out remaining hotspots. In so doing, he found Mr. Arnold lying 5-6 feet from the back door, facing his bed. Mr. Arnold’s dog was found under the bed. Both were deceased.
 

 The fireman who discovered Mr. Arnold’s body testified that the body was “stiff’ and that he called on two other firemen to check the body to confirm that the man was deceased. There was smoke and soot on the bed with an indention and clean area where Mr. Arnold had been lying. All parties agree that it seems as though Mr. Arnold awoke and, while trying to rescue his dog, succumbed to smoke and fumes. There was no soot on the body, only burns on the arm and chest consistent with steam or gas burns.
 

 The record reveals that, at approximately the same time the initial call was made to 911, another neighbor approached the mobile home and banged on the door. He could hear a dog barking, but there was no response from Mr. Arnold. The neighbor then left the trailer park to alert Mr. Arnold’s two sons, who lived less than a mile away. When they arrived back at the mobile home, the responding fire units had arrived and all attempts to go inside the trailer to see if their father was inside were[srebuffed by the firemen. According to the sons’ testimony, they were told by a fireman that their father was not inside the trailer, but had been observed leaving the trailer park. At least one of the firemen on the scene was under the impression that Mr. Arnold had been the 911 caller reporting the fire.
 

 After investigating the physical scene immediately after the fire, fire inspectors discovered that improper splicing of wires in an outlet started the fire which smoldered in a mattress that was pushed up next to the outlet on the floor. Fire department investigators determined that the fire smoldered in the mattress for up to two hours before igniting into actual flames. They concluded that there could have been smoke and gas in the mobile home sufficient to kill Mr. Arnold before the fire erupted.
 

 Investigator Tommy Willis from the coroner’s office was notified and arrived on the scene at approximately 3:00 a.m., before the body was removed from the mobile home. Assisting him was the chief investigator, Todd Sylvester. The coroner’s investigation report notes that the body was found face down next to the bed. The report further notes that
 
 rigor mortis
 
 was not present and lists the time of death as approximately 2:28 a.m., the same time that is listed for the discovery of the body. The death certificate also lists the time of death at 2:28 a.m. Officer Willis testified in deposition regarding his notation of the time of death:
 

 I think at that time what I probably used is probably the time that the fire was first reported. That’s just an estimation, not — not an exact thing.
 
 *465
 
 There’s no way to exactly know for sure....
 

 | fiOfficer Willis further agreed in his testimony that, had the fire started an hour earlier, the body would have been in “about the same condition.”
 

 Officer Willis also testified that he indicated on the report that no autopsy was ordered or performed, but that that determination was made solely by the coroner, Dr. Clyde Elliot. Dr. Elliot testified that it was standard practice not to order an autopsy in this type of case,
 
 i.e.,
 
 where there was no trauma to the body or suspicion of criminal activity associated with the death. He further testified that he did not examine the body, but found no reason from reviewing the coroner’s investigation report to dispute the findings listed thereon. By the time Dr. Elliot received the report and signed the death certificate, Mr. Arnold had been buried.
 

 The children and estranged wife of Mr. Arnold filed suit asserting a survival action and seeking damages for wrongful death. They alleged that the actions/inactions of the fire department in responding to and fighting the fire caused Mr. Arnold’s death and lessened his chances of survival. After hearing all of the evidence, some of which is outlined above, the trial court found that, more likely than not, Mr. Arnold perished from smoke/gas inhalation prior to the flames being visible outside the trailer prompting the call to 911. Accordingly, the court found that Plaintiffs had not proven by a preponderance of the evidence that any failure on the part of the fire department caused the death. While not specifically addressing the numerous alleged breaches of duty, the trial court found no evidence that, had the responding fire units arrived on the scene in three, rather than nine, minutes, Mr. Arnold would have been alive and rescued. As such, the court |7ruled in favor of the fire department, dismissing the plaintiffs’ claims with prejudice. As previously stated, the court further found that, in any event, the fire department would be immune from liability under La. R.S. 9:2798.1. This appeal ensued.
 

 DISCUSSION
 

 On appeal, the plaintiffs raise the following three assignments of error (verbatim):
 

 1. The trial court erred in failing to address the undisputed evidence that the Ouachita Parish Fire Department’s dispatch, response and approach to the fire failed to comply with the fire department’s own policies and procedures, as well as industry standards.
 

 2. The trial court erred in finding that Plaintiffs failed to carry their burden of proof that the actions and/or inactions of the Ouachita Parish Fire Department were a cause in fact of John Arnold’s death and in failing to address whether the actions and/or inactions of the Ouachita Parish Fire Department resulted in a lost chance of survival for John Arnold.
 

 3. The trial court erred in finding that the discretionary function immunity conferred by La. R.S. 9:2798.1 protects the Ouachita Parish Fire Department for its actions and/or inac-tions in its dispatch, response and approach to fighting the fire.
 

 Since the ruling of the trial court was based on its finding a lack of proof of causation, and because the resolution of this issue is determinative of review on appeal, our discussion will begin with assignment of error number two regarding the plaintiffs’ failure to carry their burden of proof on causation.
 

 In
 
 Hebert v. Rapides Parish Police Jury,
 
 06-2001 (La.4/11/07), 974 So.2d 635,
 
 *466
 
 the supreme court outlined the determination of liability for a public body:
 

 Most cases alleging negligence on the part of a public body have been analyzed by this Court under the duty-risk analysis.
 
 Cormier v. T.H.E. Ins. Co.,
 
 98-2208, p. 6 (La.9/8/99),s 745 So.2d 1, 7. In the classic duty-risk analysis, one of the inquiries the court must answer is: What, if any, duties were owed by the respective parties?
 
 Cormier,
 
 98-2208 at pp. 6-7, 745 So.2d at 7;
 
 Mart v. Hill,
 
 505 So.2d 1120, 1122 (La.1987). The particular facts and circumstances of each individual case determine the extent of the duty and the resulting degree of care necessary to fulfill that duty.
 
 Cormier,
 
 98-2208 at p. 7, 745 So.2d at 7. A plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached.
 
 Id.; Berry v. State Through Dept. of Health and Human Resources,
 
 93-2748, p. 4 (La.5/23/94), 637 So.2d 412, 414.
 

 The plaintiff bears the burden of proof and must establish his claim by a preponderance of the evidence.
 
 Benjamin ex rel. Benjamin v. Housing Authority of New Orleans,
 
 04-1058, p. 5 (La.12/1/04), 893 So.2d 1, 4-5. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact sought to be proved is more probable than not.
 
 Cangelosi v. Our Lady of the Lake Regional Medical Center,
 
 564 So.2d 654, 664 (La.1989). It follows from this, that speculation, conjecture, mere possibility, and even unsupported probabilities are not sufficient to prove a plaintiffs claim.
 
 See Coon v. Placid Oil Co.,
 
 493 So.2d 1236, 1240 (La.App. 3d Cir.),
 
 writ denied,
 
 497 So.2d 1002 (La. 1986).
 

 As previously stated, in the case
 
 sub judice,
 
 the dismissal of the plaintiffs’ case was based on the finding of the trial court that they did not prove causation,
 
 i.e.,
 
 that any alleged action or inaction on the part of the fire department was a cause-in-fact of the death of Mr. Arnold. Causation is a question of fact and is, therefore, subject to the manifest error standard of review. Mart
 
 v. Hill,
 
 505 So.2d 1120 (La.1987);
 
 Wallace v. State Farm Mutual Automobile Insurance Co.,
 
 36,099 (La.App. 2d Cir.6/14/02), 821 So.2d 704.
 

 Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an appellate court must review the record in its|9entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Stobart v. State through Dept. of Transp. and Develop ment,
 
 617 So.2d 880 (La.1993). On review, an appellate court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided the case differently.
 
 Ambrose v. New Orleans Police Dept. Ambulance Service,
 
 93-3099 (La.7/5/94), 639 So.2d 216. A reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Id.
 
 The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared
 
 *467
 
 with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
 
 Id.
 

 In its reasons for judgment, the trial court stated:
 

 All expert testimony presented at trial was to the effect that, in a mobile home fire, due to the nature of the components used in constructing a mobile home, toxic fumes and smoke are released from the inception of the fire even if not smoldering in nature and can very quickly cause any occupants to be overcome and die. The preponderance of the evidence, both direct and circumstantial, was to the effect that this fire smoldered for a significant period of time before erupting into a blaze with this smoldering action having the necessary consequence of filling the trailer with toxic fumes and smoke which, according to all the testimony, would have been fatal to Mr. Arnold within a matter of minutes. The unknown caller | inestablished that the fire was ongoing in the Arnold trailer at 2:03 a.m., the time of his first call, and necessarily conveyed the fact that the smoke and accompanying flames were already in progress in the Arnold trailer at that time.
 

 The circumstances observed by the 911 caller at the time of the first call indicate more likely than not that the interior of the trailer had already been filled with toxic fumes and smoke prior to the fire being discovered and reported and, based upon the expert testimony presented, Mr. Arnold was more likely than not already dead at the point of the first 911 call.
 

 After an exhaustive review of the record, we conclude that the evidence substantiates the finding of the trial court regarding causation. There is no definitive time of death of Mr. Arnold and the testimony is conclusive that, in a mobile home fire, the gases and fumes can overwhelm an individual and cause death before the blaze actually erupts. The uncon-tradicted testimony was that the fire smoldered for a period of time prior to producing flames. In addition, we note that there was no response from Mr. Arnold when the neighbor beat on the door of the mobile home at approximately the same time the call was being placed to 911. Moreover, at the time the first call was placed, flames were visible from the exteri- or of the structure. Finally, the testimony was inconsistent regarding the presence, of
 
 vigor mortis
 
 in the body. As stated, the firemen noted that the body was stiff, however, the two investigators with the coroner’s office reported that
 
 rigor mortis
 
 was not present. We also note that Officer Willis explained that the time within which
 
 rigor mortis
 
 sets in varies depending on the environment and conditions of the body, including the manner of death and temperature. He related that it may take anywhere from two to five hours for the body to become rigid. Accordingly, we find that the trial court was [^within its discretion to find this fact not to be determinative of the issue of causation.
 

 In summary, despite the tragic circumstances of Mr. Arnold’s death, we cannot say that the trial court was clearly wrong in holding that the plaintiffs did not prove by a preponderance of the evidence that any alleged negligence on the part of the fire department contributed to his demise. In light of our conclusion on the issue of causation and the proper dismissal of plaintiffs’ claims, we pretermit discussion of any other issues raised by plaintiffs on appeal.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court in favor of the defendant,
 
 *468
 
 the Ouachita Parish Fire Department, dismissing the claims of the plaintiffs, Robbie Arnold,
 
 et al,
 
 is affirmed at the plaintiffs’ cost.
 

 AFFIRMED.
 

 [1]
 

 . La. R.S. 9:2798.1, Policymaking or discretionary acts or omissions of public entities or their officers or employees, provides in pertinent part:
 

 A. As used in this Section, "public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumen-
 
 *463
 
 talities, officers, officials, and employees of such political subdivisions.
 

 B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.