NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1590

APRIL MARKIEWICZ, WIFE OF/AND MARK MARKIEWICZ

VERSUS

SUN CONSTRUCTION, L.L.C, PENN MILL LAKES, L.L.C, AND COOPER
ENGINEERING, INC., A PROFESSIONAL ENGINEERING
CORPORATION

*Consolidated with*

2019 CA 1591

JANET SHEA, WIFE OF/AND ALPHONSE SHEA

VERSUS

SUN CONSTRUCTION, L.L.C, PENN MILL LAKES, L.L.C, SUNRISE
CONSTRUCTION AND DEVELOPMENT, L.L.C., AND COOPER
ENGINEERING, INC., A PROFESSIONAL ENGINEERING CORPORATION

*Consolidated with*

2019 CA 1592

PATRICIA GRANT, RICHARD GRANT, MARGUERITE GUARINO, WILLIAM
GUARINO, SHERON SPRAWLS, VERNON SPRAWLS, DIANNE WHITE,
JOHNNY WHITE, JO ANN YOUNGBLOOD, WILLIAM YOUNGBLOOD,
LYNELL ROWAN, ALVIN ROWEN, GAYLE AYO, JAMES AYO, DEBORAH
LASCARI  AND DANIEL LASCARI INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED

VERSUS

SUN CONSTRUCTION, L.L.C., PENN MILL LAKES, L.L.C, SUNRISE
CONSTRUCTION AND DEVELOPMENT, L.L.C., AND COOPER
ENGINEERING, INC., A PROFESSIONAL ENGINEERING CORPORATION

Judgment Rendered:  SEP 1 8 2020

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 2006-16084 c/w 2008-10737 c/w 2008-11536

Honorable Reginald T. Badeaux, III, Judge Presiding

*************

| | |
|---|---|
| Maurice Le Gardeur<br>Covington, LA<br>and<br>Adam S. Lambert<br>New Orleans, LA | Counsel for Plaintiffs/Appellants,<br>Patricia Grant, Individually and as<br>Independent Executrix of the Succession<br>of Richard Grant, Sheron Sprawls, wife<br>of/and Vernon Sprawls, Dianne White,<br>wife of/and Johnny White, Jo Ann<br>Youngblood, wife of/and William<br>Youngblood, Lynell Rowan, wife of/and<br>Alvin Rowan, Gayle Ayo, wife of/and<br>James Ayo, Susan Casey, Janet Shea, wife<br>of/and Alphonse Shea, and Penn Mill<br>Lakes Homeowners Association, Inc. |
| Adrian G. Nadeau<br>Melissa A. Pestalozzi<br>Seth F. Lawrence<br>Baton Rouge, LA | Counsel for Defendants/Appellees,<br>John E. Bonneau and John E.<br>Bonneau & Associates, Inc. |
| Louis R. Koerner, Jr.<br>New Orleans, LA | Defendant/Intervenor, Pro Se |
| David M. Moragas<br>New Orleans, LA | Counsel for Defendant,<br>Zurich American Insurance Company |
| J. Scott Loeb<br>Jonas P. Baker<br>Mandeville, LA<br>and<br>Carl T. Conrad<br>C. T. Williams, Jr.<br>Aldric C. Poirier, Jr.<br>Mandeville, LA<br>and<br>John S. Lawrence, Jr.<br>Mandeville, LA | Counsel for Defendants,<br>Sun Construction, L.L.C, Lawrence A.<br>Kornman, Penn Mill Lakes, L.L.C, and<br>Sunrise Construction and Development,<br>L.L.C |
| Thomas P. Anzelmo<br>Christine M. Berger<br>Kevin P. Kress<br>New Orleans, LA | Counsel for Defendants,<br>St. Tammany Parish Government,<br>James A. (Red) Thompson, and<br>Jean M. Thibodeaux |

2

J. Ashley Inabnet
Glen E. Mercer
Kourtney T. French
New Orleans, LA

Counsel for Defendant,
Clarendon America Insurance
Company

Robert I. Siegel
Tucker T. Bohren
New Orleans, LA

Counsel for Defendant,
The Insurance Company of the State
of Pennsylvania

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., GUIDRY AND WOLFE, JJ.

*Whipple, C.J. Concurs.*

3

**WHIPPLE, C.J.**

In this appeal, plaintiffs appeal the trial court's June 11, 2019 judgment, which granted in part the defendant surveyors' motion for summary judgment and dismissed with prejudice the claims against them of all named plaintiffs, with the exception of those of Susan Casey, on the basis of peremption. For the following reasons, we affirm the trial court's partial grant of the motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

This putative class action arises out three consolidated lawsuits brought by homeowners in Penn Mill Lakes Subdivision in St. Tammany Parish, alleging defects in the design and construction of the drainage system of the subdivision and seeking to recover damages from flooding allegedly caused by these defects.

April and Mark Markiewicz filed suit on December 8, 2006, and Janet and Alphonse Shea filed suit on February 8, 2008, asserting claims under the New Home Warranty Act, LSA-R.S. 9:3141, et seq., and alleging that the defective design, construction, and planning of the drainage system had caused flooding in the subdivision.[1] Then on March 20, 2008, Patricia Grant, Richard Grant, Marguerite Guarino, William Guarino, Sheron Sprawls, Vernon Sprawls, Dianne White, Johnny White, Jo Ann Youngblood, William Youngblood, Lynell Rowan, Alvin Rowan, Gayle Ayo, James Ayo, Deborah Lascari and Daniel Lascari filed a class action petition, individually and on behalf of all others similarly situated. In that petition, plaintiffs asserted claims in negligence, strict liability, and nuisance and also alleged that the drainage system utilized throughout the subdivision was defective in design and as constructed and installed. These matters were ultimately consolidated by judgments dated January 6, 2009, and the class action petition was amended numerous times thereafter.

---

[1]The Sheas alternatively alleged claims in negligence, strict liability, and nuisance.

Through original and amended class action petitions, plaintiffs named as defendants various individuals and entities allegedly involved in the design and construction of the drainage system in Penn Mill Lakes Subdivision.[2] At issue herein are the claims asserted in plaintiffs' fourth amended petition filed on February 12, 2016, wherein plaintiffs named as additional defendants John E. Bonneau and John E. Bonneau & Associates, Inc.[3] In that amended class action petition, plaintiffs alleged that John E. Bonneau, a professional land surveyor associated with and working for John E. Bonneau & Associates, Inc., and John E. Bonneau & Associates, Inc. (at times collectively referred to as "the Bonneau defendants") provided and have continued to provide professional land surveying services on behalf of the developers of Penn Mill Lakes Subdivision, including preparing elevation certificates that were provided to homeowners during the sale process. They further averred that the Bonneau defendants knowingly and/or fraudulently and/or negligently and/or with reckless disregard for truth and accuracy provided incorrect and/or false and/or misleading surveying certificates and information to homebuyers in the Penn Mill Lakes Subdivision, despite their actual and/or imputed knowledge that the elevations therein were not correct and that the actual elevations were twelve inches to twenty or more inches lower than represented on the surveys. Plaintiffs additionally alleged that the Bonneau defendants conspired to defraud the homebuyers by intentionally misleading them as to the actual lower elevations of their lots and homes. Specifically, they allege

---

[2]Those named defendants included Penn Mill Lakes, L.L.C., and Sunrise Construction and Development, L.L.C., as the developers of Penn Mill Lakes Subdivision; Sun Construction, L.L.C., as the general contractor/builder of the subdivision; Lawrence Kornman, as the manager of Sun Construction and Penn Mill Lakes, L.L.C.; Cooper Engineering, Inc. and its successor corporation, as the engineering firm responsible for designing the drainage system in the subdivision; Leroy Cooper, as alleged owner of Cooper Engineering and the employee principally responsible for the design of the drainage system; St. Tammany Parish Government and certain elected officials or employees thereof, for the approval of the development, issuance of building permits, and alleged acceptance of the streets, swales, drainage system, and retention ponds into parish ownership and maintenance; and certain insurers of various defendants.

[3]In their fourth amended class action petition, plaintiffs also named as additional plaintiffs Susan Casey and the Penn Mill Lakes Homeowners Association.

5

that the Bonneau defendants continued to use incorrect elevations despite having actual and/or imputed knowledge no later than 2009 that the initial elevations were "significantly incorrect" and "knowingly and/or fraudulently and/or negligently and/or with reckless disregard for truth and accuracy" certified the incorrect elevations as true and accurate to the homebuyers.

Plaintiffs asserted that these actions in providing incorrect elevation certifications continued at least up to the year 2015, when Susan Casey purchased her home, and continue to the present, and amount to fraud and an ongoing violation of the Louisiana Unfair Trade Practice and Consumer Protection Law.

The Bonneau defendants then filed a motion for summary judgment, averring that the claims of all plaintiffs except Susan Casey were perempted under the provisions of LSA-R.S. 9:5607, which provides for a peremptive period of five years for actions for damages against a professional surveyor, except in cases of fraud.[4] The Bonneau defendants contended that the five-year peremptive period had run as to the claims of all named plaintiffs, with the exception of Casey, prior to the time plaintiffs named them as defendants on February 12, 2016. They further contended that while plaintiffs had asserted claims of fraud against the Bonneau defendants in an attempt to circumvent the five-year peremptive period, plaintiffs could not establish the essential elements of their fraud claims. Thus, the Bonneau defendants contended that the claims of all plaintiffs except Casey against them were perempted. Further, as to plaintiff Casey's claims against them, the Bonneau defendants argued that Casey's claims nonetheless should be dismissed because Casey admitted she had not suffered any damages, an essential element of her claim against them.

---

[4]The named plaintiffs in the putative class action at the time the motion was filed were: Patricia Grant, individually and as Independent Executrix of the Succession of Richard Grant; Gayle and James Ayo; Lynell and Alvin Rowan; Sheron and Vernon Sprawls; Dianne and Johnny White; Jo Ann and William Youngblood; Janet and Alphonse Shea; Susan Casey; and Penn Mill Lakes Homeowners Association, Inc.

6

Following a hearing on the motion, the trial court, by judgment dated June 11, 2019, granted in part the Bonneau defendants' motion for summary judgment and dismissed with prejudice the claims of all plaintiffs against them, except the claims of Susan Casey, specifically including the claims of: Patricia Grant, individually and as Independent Executrix of the Succession of Richard Grant; Gayle Ayo; James Ayo; Lynell Rowan; Alvin Rowan; Sheron Sprawls; Vernon Sprawls; Dianne White; Johnny White; Jo Ann Youngblood; William Youngblood; Janet Shea; Alphonse Shea; and Penn Mill Lakes Homeowners Association. The Bonneau defendants' motion for summary judgment was denied as to plaintiff Susan Casey.[5] In the June 11, 2019 judgment, the trial court further ruled, in the alternative, that it considered the Bonneau defendants' motion for summary judgment to be a peremptory exception of peremption, which it sustained, and dismissed with prejudice the claims of all plaintiffs, except those of Susan Casey, against these defendants.[6]

From this judgment,[7] plaintiffs appeal, listing five assignments of error.

## SUMMARY JUDGMENT PRECEPTS

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jones v. Anderson, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So. 3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA–C.C.P. art. 966(A)(3).

---

[5]The Bonneau defendants filed a writ application with this court, docketed as 2019 CW 0877, challenging the trial court's denial of their motion for summary judgment as to the claims of Susan Casey. However, that writ application was denied on November 7, 2019.

[6]The trial court designated the June 11, 2019 judgment as a final judgment.

[7]Although not before us on appeal, in a subsequent July 11, 2019 judgment, the trial court purported to again dismiss with prejudice the claims of all plaintiffs against the Bonneau defendants, except those of Susan Casey, on the basis of peremption "because plaintiffs failed to meet the burden of proof of fraud."

The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA–C.C.P. art. 966(D)(1).

On the other hand, when the mover will bear the burden of proof at trial, the mover has the burden of showing that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Only when the mover makes this showing does the burden shift to the opposing party to present evidence demonstrating a material factual issue remains. Action Oilfield Services, Inc. v. Energy Management Company, 2018-1146 (La. App. 1ˢᵗ Cir. 4/17/19), 276 So. 3d 538, 541-542. If, however, the mover does not resolve all material issues of fact, the burden never shifts to the opposing party. In that situation, the opposing party has nothing to prove in response to the motion for summary judgment, and summary judgment should be denied. See Hat's Equipment, Inc. WHM, L.L.C., 2011-1982 (La. App. 1ˢᵗ Cir. 5/4/12), 92 So. 3d 1072, 1076.

Summary judgment is an appropriate means of addressing the issue of peremption. When peremption is raised by motion for summary judgment, the review is de novo using the same criteria used by the district court in determining whether summary judgment is appropriate. See Hogg v. Chevron USA, Inc., 2009-2632 (La. 7/6/10), 45 So. 3d 991, 997; Honore v. Brouillette, 2017-0908 (La. App. 1ˢᵗ Cir. 12/21/17), 2017 WL 6524664, *3 (unpublished). Thus, appellate courts ask the same questions as the district court: whether there is any genuine issue of

8

material fact and whether the mover is entitled to judgment as a matter of law. Crosstex Energy Services, LP v. Texas Brine Company, L.L.C., 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So. 3d 932, 936, writ denied, 2018-0145 (La. 3/23/18), 238 So. 2d 963. Because it is the applicable substantive law that determines materiality, whether a particular issue in dispute is material can be seen only in light of the substantive law applicable to the case. Jones, 224 So. 3d at 417.

## DISCUSSION

Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. LSA-C.C. art. 3458. Peremption differs from prescription in several respects. While prescription prevents the enforcement of a right by legal action, but does not terminate the natural obligation, peremption extinguishes or destroys the right. Bel v. State Farm Mutual Automobile Insurance Co., 2002-1292 (La. App. 1st Cir. 2/14/03), 845 So. 2d 377, 380, writ denied, 2003-0733 (La. 5/30/03), 845 So. 2d 1057. Public policy requires that rights to which peremptive periods attach are extinguished after the passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period; it may not be interrupted or suspended, and there is no provision for its renunciation. LSA-C.C. art. 3461; Bel, 845 So. 2d at 380.

Claims for damages against professional surveyors, except those involving fraud, are subject to a peremptive period as set forth in LSA-R.S. 9:5607, which provides in pertinent part as follows:

> A. No action for damages against any professional ... surveyor ... or licensee as defined in R.S. 37:682, ... whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide any manner of movable or immovable planning, construction, design, or building, which may include but is not limited to consultation, planning, designs, drawings, specifications, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought unless filed in a court of competent jurisdiction and proper venue at the latest within five years from:

9

(1) The date of registry in the mortgage office of acceptance of the work by owner; or

(2) The date the owner has occupied or taken possession of the improvement, in whole or in part, if no such acceptance is recorded; or

(3) The date the person furnishing such services has completed the services with regard to actions against that person, if the person performing or furnishing the services, as described herein, does not render the services preparatory to construction, or if the person furnishes such services preparatory to construction but the person furnishing such services does not perform any inspection of the work.

\* \* \*

C. The five-year period of limitation provided for in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

D. The provisions of this Section shall take precedence over and supersede the provisions of R.S.9:2772 and Civil Code Articles 2762 and 3545.

E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953. ...

Because peremption was raised through a motion for summary judgment as to the claims of all named plaintiffs in this putative class action except for the claims of plaintiff Susan Casey, the Bonneau defendants were required to prove that there was no genuine issue of material fact regarding the running of the five-year peremptive period prior to plaintiffs naming them as defendants herein. See generally Honore, 2017 WL 6524664 at *3-4 (involving peremption of a legal malpractice claim).

In support of their motion for summary judgment, the Bonneau defendants filed as an exhibit plaintiffs' fourth amended class action petition, naming John Bonneau and John E. Bonneau & Associates, Inc. as defendants in this putative class action. In that amended petition, which was filed by plaintiffs on February 12, 2016, plaintiffs alleged that the Bonneau defendants provided and continued to provide professional land surveying services on behalf of the developer of Penn Mill Lakes Subdivision, including elevation certificates that were provided to

10

homeowners during the sales process between them and the subdivision developer. Plaintiffs further averred therein that the Bonneau defendants provided incorrect, false, and/or misleading elevation certificates and that plaintiffs relied upon those false averments in purchasing their homes.

Through their exhibits in support of their motion for summary judgment, the Bonneau defendants established that John E. Bonneau & Associates, Inc., through John Bonneau, provided professional land surveying services, including the preparation of individual lot surveys, to Sunrise Construction and Development Corporation and Coast Builders, L.L.C., in connection with the development of Penn Mill Lakes Subdivision. The Bonneau defendants did not design, build, or construct the subdivision or any lots or homes within the subdivision, nor did they perform any inspections of any construction work performed on any lot within Penn Mill Lakes Subdivision. Thus, because the Bonneau defendants did not perform any inspection of the work, the right to bring any claim by plaintiffs related to those surveying services would be perempted five years after the Bonneau defendants completed the surveys of the lots plaintiffs ultimately purchased. LSA-R.S. 9:5607(A)(3).

The Bonneau defendants' exhibits further established that the final lot surveys prepared by the Bonneau defendants for lots subsequently purchased by the plaintiff homeowners with the exception of plaintiff Susan Casey were completed no later than August 27, 2007, well more than five years before plaintiffs named Bonneau and John E. Bonneau & Associates, L.L.C., as defendants on February 12, 2016. Accordingly, the Bonneau defendants carried their burden of proof that there was no genuine issue of material fact regarding the applicability of LSA-R.S. 9:5607 and the extinguishment of plaintiffs' non-fraud claims against the Bonneau defendants at the expiration of the five-year peremptive period. Indeed, at the hearing on the motion for summary judgment,

11

plaintiffs' counsel acknowledged that in the absence of fraud, the claims of named plaintiffs other than Susan Casey would be perempted.

In their second through fifth assignments of error, plaintiffs challenge the trial court's finding that they had failed to demonstrate a genuine issue of material fact as to their fraud claims and, consequently, its partial grant of the Bonneau defendants' motion for summary judgment on the basis of peremption. Plaintiffs contend that the partial grant of the motion for summary judgment was in error because they demonstrated the existence of genuine issues of material fact of fraud by the Bonneau defendants in completing inaccurate elevation certificates as late as 2014.

With regard to plaintiffs' fraud claims, the Bonneau defendants contended in support of their motion that there was an absence of factual support for each of the elements of plaintiffs' fraud claim and, thus, that they were entitled to judgment in their favor dismissing the named plaintiffs' claims, except those of Susan Casey against them as perempted.

As stated above, LSA-R.S. 9:5607(E) provides that the five-year peremptive period for damage claims against a professional surveyor shall not apply in cases of fraud as defined in LSA-C.C. art. 1953. Fraud is "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other," and it may also result from silence or inaction. LSA-C.C. art. 1953. There are three basic elements to an action for fraud: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to the other party; and (3) the resulting error must relate to a circumstance substantially influencing the other party's contractual consent. Terrebonne Concrete, LLC. v. CEC Enterprises, LLC, 2011-0072 – 2011-0079 (La. App. 1st Cir. 8/17/11), 76 So. 3d 502, 509, writ denied, 2011-2021 (La. 11/18/11), 75

12

So. 3d 464. The party asserting a claim of fraud has the burden of proving fraud by a preponderance of the evidence, both direct and circumstantial.[8] LSA-C.C. art. 1957; see Irving v. Katie Santo, Inc., 2018-1619 (La. App. 1st Cir. 6/13/19), 2019 WL 2609035, *3 (unpublished), & Montet v. Lyles, 93-1724 (La. App. 1st Cir. 6/24/94), 638 So. 2d 727, 730, writ denied, 94-1985 (La. 11/18/94), 646 So. 2d 377. Because plaintiffs would bear the burden of proof at trial as to their fraud claims, the Bonneau defendants had the burden on summary judgment to point out the absence of factual support for one or more of the elements of plaintiffs' fraud claim. LSA-C.C.P. art. 966(D)(1); see Irving, 2019 WL 2609035 at *3.

As to the first element of fraud, namely, a misrepresentation, suppression, or omission of true information, the Bonneau defendants contended in support of their motion there was no evidence that the Bonneau defendants knew that the complained-of elevations were incorrect or that they intentionally mislead plaintiffs as to their accuracy. They pointed to plaintiffs' responses to interrogatories, wherein when questioned about how these defendants intentionally misled them as to the elevations, plaintiffs responded that they believed the elevations on their lot surveys were incorrect, but were "unable to precisely detail how or why [John] Bonneau failed to accurately measure" the elevations. The Bonneau defendants also submitted excerpts of various plaintiffs' depositions, wherein they testified that they had no reason to believe that the elevations on their lot surveys were incorrect and/or that they were not aware of any facts to support a claim that the Bonneau defendants intended to deceive or defraud them in connection with the purchase of their homes. The Bonneau defendants also presented excerpts of the deposition of the corporate

---

[8]Regarding plaintiffs' fourth assignment of error wherein they contend that the trial court erroneously stated their burden of proof as to the claim of fraud, initially we note that this court's review of the summary judgment is de novo, with no deference given to the trial court's findings. Hogg, 45 So. 3d at 997. Moreover, regardless of the ultimate burden of proof of a fraud claim at a trial, the Bonneau defendants' burden on summary judgment was to point to an absence of factual support for one or more of the elements of plaintiffs' fraud claim. Once such a showing is made, the burden then shifts to plaintiffs to show only the existence of a genuine issue of material fact. LSA–C.C.P. art. 966(D)(1).

representative of Penn Mill Lakes Homeowners Association wherein he testified that to his knowledge, the Bonneau defendants did not provide any incorrect, misleading, or false survey information to the Homeowners Association and that he had no reason to believe that the Bonneau defendants intended to defraud or deceive the Homeowners Association. Additionally, the Bonneau defendants pointed to plaintiffs' allegations in their fourth amended petition naming them as defendants, wherein they averred that "no later than 2009," the Bonneau defendants had actual or imputed knowledge that their "initial elevations" were "significantly incorrect," noting that, with the exception of the surveys of plaintiff Casey's lot, all the lot surveys were performed well prior to 2009.

The Bonneau defendants also submitted deposition testimony of Kelly McHugh, a licensed professional surveyor hired by counsel for the engineer who designed the drainage plan for Penn Mill Lakes Subdivision after this putative class action suit was filed, to perform surveys of Penn Mill Lakes Subdivision.[9] With regard to the survey he conducted in Penn Mill Lakes Subdivision in 2009 using the NAVD88 datum, McHugh testified that he produced two plats, one using Bonneau's benchmark and one using his GPS measurements, and there was a fourteen-inch difference between Bonneau's survey and his survey throughout the entire studied area.[10] While McHugh testified that he was relatively sure that his 2009

_____

[9]Plaintiffs objected to McHugh's deposition, but the trial court overruled plaintiffs' objection and allowed the deposition to be filed. Plaintiffs have not assigned error to this ruling by the trial court on appeal.

[10]For elevation purposes, a datum is a fixed reference, often called a benchmark. In 1929, the United States published a continent-wide physical datum measuring vertical positions, i.e., elevations, the National Geodetic Vertical Datum of 1929 or NGVD29. The NGVD29 Datum was based upon stated elevations of static benchmarks in the ground. In 1988, the North American Vertical Datum of 1988 (NAVD88), which uses GPS measurements, was promulgated. In approximately 2009, the government discontinued the use of static benchmarks throughout the country, relying instead on GPS, and also stopped publishing the old static benchmarks. Surveys based on different datums will necessarily produce different elevations and cannot be compared directly. Software programs have been developed to convert from one datum to another, but exact conversions between NGVD29 and NAVD88 are technically impossible.

In performing his surveys, Bonneau used NGVD29, which was the benchmark used during the development of Penn Mill Lakes Subdivision, whereas in his later surveys, McHugh used NAVD88.

measurements were correct, he could not opine that Bonneau's measurement of his NGVD29 benchmark was in error, noting that Bonneau used an old established benchmark that is no longer in use. McHugh explained that surveys based on NGVD29 and NAVD88 reference different datum and will necessarily produce different elevations. However, he agreed that the difference between the two datums should be only in the range of 1.5 **inches**, not 1.15 **feet**. Nonetheless, he further testified that he had no reason to believe that Bonneau breached the standard of care for professional surveyors or that Bonneau tried to mislead anyone when he attempted to explain the differences between his surveys using NGVD29 and McHugh's surveys using NAVD88, stating that he thought it was a "good explanation."

In opposition, plaintiffs argued that John Bonneau mis-measured the Penn Mill Lakes benchmark he used and that his measurement was fourteen inches too high. They further contended that John Bonneau's use of an erroneous benchmark elevation perpetuated his elevation error throughout the entire Penn Mill Lakes Subdivision, resulting in his elevations being fourteen inches too high throughout the subdivision and the drainage system being constructed fourteen inches too low. Plaintiffs asserted that while Bonneau initially thought his benchmark elevations were correct, "he found out he was wrong in 2009" when additional surveys of the subdivision were performed by McHugh, but he then "continually lied" to "cover up" his elevation errors.

In support of this argument, plaintiffs pointed to John Bonneau's testimony in his February 2019 deposition as well as a September 2009 letter from Bonneau to the developer. In both the 2009 letter and in his deposition, Bonneau explained that he and McHugh used different datums in performing their surveys, which he believed accounted for the difference in their elevations. Bonneau further testified

15

in deposition that he stood by his benchmark measurement and denied that there was any surveying error.

Plaintiffs also relied upon, among other evidence, the affidavit of a certified flood plain administrator, who opined from a review of McHugh's data in his 2009 surveys that Bonneau's elevations in Penn Mill Lakes Subdivision were approximately twelve to fourteen inches higher than accurate values. They also offered the affidavit of a licensed professional land surveyor, who opined that a check of the values of published benchmarks in the area reveal the differences in between NAVD88 and NGVD29 are in the range of two inches or less, rather than one and one-half to two feet, and that Bonneau did not perform to the expected level of reasonable care for land surveyors.

Plaintiffs averred in opposition to the motion that Bonneau "creat[ed] DATUM excuses to defend his untenable position," thus attempting to "mislead those involved with the project, not only when the surveying errors were initially discovered, but throughout discovery in this matter including at his recent deposition." Accordingly, plaintiffs averred that genuine issues of material fact existed as to the Bonneau defendants' elevation errors and Bonneau's "fabricated" explanation, which they contended constituted fraud. Plaintiffs further asserted that, "[t]o this day, Bonneau refuses to admit he provided erroneous elevations and continues to perpetuate this fraud."

Although summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice, summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent. Florida Parishes Juvenile Commission by and on behalf of the Florida Parishes Juvenile Justice District v. Hannis T. Bourgeois, L.L.C., 2015-1287 (La. App. 1st Cir. 9/27/16), 2016 WL 5402110, *5 (unpublished). Fraudulent intent or intent to deceive is a necessary element of a fraudulent

16

misrepresentation. See Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 2011-2254 (La. App. 1st Cir. 7/10/12), 97 So. 3d 595, 599. Thus, fraud cannot be predicated on a mere mistake or negligence, however gross. Charming Charlie, Inc., 97 So. 3d at 599; Bass v. Coupel, 93-1270 (La. App. 1st Cir. 6/23/95), 671 So. 2d 344, 347, writ denied, 95-3094 (La. 3/15/96), 669 So. 2d 426. Moreover, a defendant cannot fraudulently conceal his mistake if he has no knowledge of that mistake. See Huffman v. Goodman, 34,361 (La. App. 2nd Cir. 4/4/01), 784 So. 2d 718, 726, writ denied, 2001-1331 (La. 6/22/01), 794 So. 2d 791.

On review, we note that while factual disputes exist as to whether Bonneau's measurements were erroneous, plaintiffs offered no factual support sufficient to establish the existence of a genuine issue of material fact as to whether the Bonneau defendants were aware of any discrepancy or alleged error at the time they completed the surveys at issue or as to whether the Bonneau defendants knowingly misrepresented the elevations, or suppressed or omitted true information regarding the surveys they prepared for the lots or property owned by these plaintiffs.

Other than their argument in the trial court and on appeal that, when faced with differing elevation measurements by another surveyor, Bonneau defended the accuracy of his surveys and failed to acknowledge that his measurements, upon which he continued to rely in conducting other surveys, were incorrect, plaintiffs have not pointed to any evidence, direct or circumstantial, to establish the existence of a genuine issue of material fact as to any alleged fraudulent misrepresentation. While fraud may be established by circumstantial evidence, including highly suspicious facts and circumstances, we find on *de novo* review that the summary judgment evidence submitted by plaintiffs is devoid of any suspicious circumstances or facts to establish a genuine issue of material fact as to whether fraud could be so inferred herein. See generally Florida Parishes Juvenile

17

Justice Commission by and on behalf of the Florida Parishes Juvenile Justice District, 2016 WL 5402110 at *6.

Accordingly, on *de novo* review, because the Bonneau defendants carried their burden of pointing to the absence of factual support for each of the elements of plaintiffs' fraud claims and plaintiffs failed to produce factual support sufficient to establish the existence of a genuine issue of material fact as to any alleged fraudulent misrepresentations by the Bonneau defendants, we find no error in the trial court's partial grant of the Bonneau defendant's motion for summary judgment and dismissal of the claims of the named plaintiffs, except those claims of Susan Casey, against them on the basis of peremption.[11]

## CONCLUSION

For the above and foregoing reasons, we affirm the trial court's June 11, 2019 judgment granting in part the motion for summary judgment filed by defendants John E. Bonneau and John E. Bonneau & Associates, Inc. and dismissing with prejudice the claims of all plaintiffs against them except the claims of Susan Casey, specifically including the claims of: Patricia Grant, individually and as Independent Executrix of the Succession of Richard Grant; Gayle Ayo; James Ayo; Lynell Rowan; Alvin Rowan; Sheron Sprawls; Vernon Sprawls; Dianne White; Johnny White; Jo Ann Youngblood; William Youngblood; Janet Shea; Alphonse Shea; and Penn Mill Lakes Homeowners Association.

Costs of this appeal are assessed equally against plaintiffs Patricia Grant, individually and as Independent Executrix of the Succession of Richard Grant; Gayle Ayo; James Ayo; Lynell Rowan; Alvin Rowan; Sheron Sprawls; Vernon Sprawls;

---

[11]Because we affirm the portion of the trial court's judgment granting in part the Bonneau defendants' motion for summary judgment, we pretermit consideration of plaintiffs' first assignment of error through which they contend that the trial court erred in considering the Bonneau defendants' motion for summary judgment as a peremptory exception of peremption and sustaining the exception.

18

Dianne White; Johnny White; Jo Ann Youngblood; William Youngblood; Janet Shea; Alphonse Shea; and Penn Mill Lakes Homeowners Association.

**AFFIRMED.**